In re Guy Hamilton JONES, Jr., Debtor.

Richard L. RAMSAY, Trustee, Plaintiff,

v.

Guy Hamilton JONES, Jr., Defendant.

Mary JONES and Christopher Jones, a minor, by Mary Jones, his mother and natural guardian, and Thomas E. Jones, Jr., Plaintiffs,

v.

Guy Hamilton JONES, Jr., Defendant.

Bankruptcy No. 92–42755M.
Adv. Nos. 93–4057M, 93–4058M.

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

Aug. 2, 1994.

Judy Simmons Henry, Wright, Lindsey & Jennings, Little Rock, AR, for Mary Jones and Christopher Jones.

Charles W. Baker, Rose Law Firm, P.A., Little Rock, AR, for debtor.

Richard L. Ramsay, Trustee, Arnold, Grobmyer & Haley, Little Rock, AR.

## MEMORANDUM OPINION

JAMES G. MIXON, Chief Judge.

On November 12, 1992, Guy Hamilton Jones, Jr. ("Jones") and Guy Jones, Jr., P.A. ("the P.A.") filed voluntary petitions for relief under the provisions of Chapter 7 of the United States Bankruptcy Code. Jones is an attorney, who conducts his legal profession through the professional association, Guy Jones, Jr., P.A. Richard L. Ramsay was appointed the trustee in both cases.

On April 15, 1993, the trustee and Mary Jones, Christopher Jones, and Thomas E. Jones, Jr. ("the plaintiffs") filed complaints objecting to Jones's discharge. Jones filed timely answers denying the essential allegations of each of the complaints. The proceedings were consolidated for trial by agreement, and the trial was conducted beginning October 27, 1993.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) (1988), and the Court has jurisdiction to enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

## BACKGROUND

11 U.S.C. § 727 (1988) lists various grounds upon which a debtor's discharge may be denied. The plaintiffs allege that Jones violated the following subsections:

### 11 U.S.C. § 727(a)(2)

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred ... or concealed, or has permitted to be transferred, ... or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

### 11 U.S.C. § 727(a)(3)

(a) The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, ... or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

### 11 U.S.C. § 727(a)(4)(A) and (D)

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

. . . .

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

### 11 U.S.C. § 727(a)(7)

(a) The court shall grant the debtor a discharge, unless—

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider.

■ The plaintiffs have the burden of proving facts essential to an objection to discharge by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *First Commercial Bank. v. Locke (In re Locke)*, 50 B.R. 443, 451 (Bankr.E.D.Ark.1985); Fed. R.Bankr.P. 4005. However, once a creditor introduces proof that the debtor committed any of the prohibited acts, the debtor has the burden of coming forward with evidence to explain his conduct. *Jolles v. Freedman (In re Freedman)*, 693 F.2d 50, 51 (8th Cir.1982).

■ The plaintiffs introduced evidence of several acts and omissions by Jones in his individual case and by Jones in connection with the P.A. case. Jones's discharge can be denied if he violated the provisions of 11 U.S.C. § 727 in either case. 11 U.S.C. § 727(a)(7) (1988); 4 *Collier on Bankruptcy* ¶ 727.10 (Lawrence P. King ed., 15th ed. 1994).

The plaintiffs' allegations as to each ground will be discussed separately below:

### I

### 11 U.S.C. § 727(a)(4)(A) and (a)(7)

### (False Oath)

The plaintiffs introduced evidence that the debtor in both cases failed to schedule bank accounts and scheduled other accounts inaccurately. The plaintiffs also introduced evidence that Jones failed to schedule property he owned on the date the petition was filed and failed to answer questions correctly on his schedules. Jones was called to the stand by the plaintiffs, but he testified only to his name, and invoked his Fifth Amendment privilege in response to other questions that were asked.

The plaintiffs introduced the following evidence concerning this count of their complaints:

### Bank Accounts

Schedule B of a bankruptcy petition requires a debtor to list all personal property of whatever kind that a debtor owns as of the date the bankruptcy petition is filed. The debtors listed ownership of bank accounts as follows:

| | | |
|---|---|---|
| Individual Case | 1st Nat'l Bank<br>Conway AR<br>Personal Checking | $1,100.00 |
| PA Case | Worthen Bank<br>Conway AR<br>General Ofc Acct | 3,600.00 |
| PA Case | Worthen Bank<br>Conway AR<br>Escrow Account | 347.00 |
| PA Case | Worthen Bank<br>Conway AR<br>Tax & Insurance | 25.00 |

However, at trial, the plaintiffs introduced evidence indicating that the debtors had an interest in the following bank accounts as of the date the petitions were filed:

| | | |
|---|---|---|
| Individual Case | Worthen Bank<br>Conway AR<br>Aaron Aviation Inc<br>By Guy Jones Jr. | 295.78 |
| PA Case | 1st Nat'l Bank<br>Conway AR<br>Attorney Account | 1,207.32 |
| PA Case | Worthen Bank<br>Conway AR<br>Office Account | 14,590.00 |
| PA Case | Worthen Bank<br>Conway AR<br>Employee Pension<br>Trust Account | 40,275.85 |
| PA Case | Worthen Bank<br>Conway AR<br>Tax and Insurance | 6,775.76 |

The plaintiffs also introduced evidence of the existence of a Guy Jones, Jr., P.A., Employee Pension Trust Account at Stephens, Inc., in Little Rock, Arkansas. Bank records from Worthen Bank established that Jones has signatory authority over the Stephens' Account. The trustee testified that at the first meeting of creditors Jones acknowledged the existence of the Guy Jones, Jr., Employees Pension Trust Account at Stephens, Inc., (the "Stephens' Account"). The trustee stated that Jones could not recall the balance of the Stephens' Account, but did indicate that his office building was owned by the trust. The trustee testified that as of August 1993 the Stephens' Account had a balance of approximately $293,000.00.

The plaintiffs also introduced evidence of a check dated November 10, 1992, drawn on the Guy Jones, Jr., P.A., Employees Pension Trust Account at Worthen Bank in the amount of $40,300.00, which was deposited in the Stephens' Account. This check was paid by Worthen on January 6, 1993. The trustee testified that Jones never disclosed the Employee Pension Trust Account at Worthen Bank and the trustee only discovered this account in response to a subpoena issued to Worthen Bank.

The trustee acknowledged that counsel for the debtor, at the beginning of the first meeting of creditors, stated that "there are things that have to be changed about the schedules and Statements of Affairs." The debtor argues in his brief that he testified at the first meeting about the bank balances and stated that the amounts on the schedules were only estimates. The debtor also argues that he had no ownership interest in the Stephens' Account, the Stephens' Account is not property of the estate, and he was not obligated to include the Stephens' Account in his schedules.

▇ Jones offers no credible explanation for his failure to fully and accurately list the bank accounts in the schedules. Jones's argument that his counsel's disclosure at the first meeting absolved the debtor for his failure to list all of his bank accounts accurately is not persuasive. The only evidence of Jones's disclosures concerning the bank accounts were through the trustee's testimony. The record does not disclose whether the debtor voluntarily revealed the existence of any omitted bank accounts or whether he was compelled to acknowledge the omission when confronted with irrefutable proof of the existence of the bank accounts. The record does reflect that the debtors have never filed amended schedules to reflect the correct number of bank accounts with the correct balances as of the date the petitions were filed.

▇ Jones's argument that he was not required to schedule the Guy Jones, Jr., P.A., Employees Trust Accounts is also not persuasive. The instructions to Schedule B require the debtor to list property held "for the debtor by someone else." The evidence clearly established that Jones personally exercised control over the account. The schedules reflect that Jones is an employee of the

P.A., which is evidence that Jones is a beneficiary of the trust, therefore, the trust account is property held by another for Jones's benefit.

### Marshall and Carol Gordon Promissory Note

Jones represented on Schedule B of his individual petition that the only "liquidated debts owing to the debtor" were wages from Guy Jones, Jr., P.A. The plaintiffs introduced evidence that regular payments of $86.00 per month were deposited into the P.A. attorney account at First National Bank before and after the petition date. The checks, which were deposited postpetition, contained notations identifying them as "payments" or "land payments." The December 1992 payment noted that it was the 13th payment while the June 1993 payment noted that it was the 20th payment. The trustee was later provided with a copy of a promissory note made by Marshall and Carol Gordon payable to the debtor. The Gordons' note receivable was not scheduled as an asset in either of the debtors' petitions.

Jones argues in his brief that the deposits were fully explained at the first meeting of creditors. However, the record does not support his argument, and the debtor offered no evidence at the trial to explain his failure to schedule the Gordons' note receivable.

### Cessna 150 Aircraft

Neither Jones's schedules and nor the P.A.'s schedules reflect any ownership interest in a Cessna 150 aircraft as of the date the petitions were filed, nor is there any indication of a transfer of a Cessna 150 aircraft within one year of the date the petitions were filed. Beverly Jones, the debtor's former wife, testified that in the Summer of 1992 Jones owned an interest in a Cessna 150 aircraft. She testified that Jones told her his friend Bobby Joe Blythe had taken the aircraft to south Arkansas in the fall of 1992.

Pamela Lee Stevenson (Stevenson), manager of the Conway Airport, testified that in 1992 Jones had a Cessna 150 aircraft tied down at the Conway airport. She testified that the last record of tie-down charges to Jones for the Cessna 150 aircraft is dated July 1992. The trustee testified that in an August 1993 deposition the debtor acknowledged owning a one-fourth interest in a Cessna airplane.

Jones argues in his brief that there simply is no proof in the record that the debtor had any interest in a Cessna 150 aircraft. The argument is unavailing. Three witnesses testified that Jones had possession of and an interest in a Cessna 150 aircraft during 1992. The testimony by each witness was credible and Jones offered no evidence at trial to the contrary.

### Marchetti Aircraft

Neither Jones's schedules nor the P.A.'s schedules reflect any ownership interest of a Marchetti aircraft, nor is there any disclosure of the transfer of a Marchetti aircraft within one year of the date the petitions were filed. The plaintiffs introduced evidence of statements made by Jones at a hearing conducted before the National Transportation Safety Board on March 24, 1993, in which Jones made the following statements while questioning a witness:

Q: (Jones) Okay. That aircraft is really not owned by me, is it, sir?

. . . .

Q: (Jones) That's an absolute untruth. It's registered to somebody else other than me, isn't it, sir?

. . . .

Q: (Jones) Actually, it's registered to Guy Jones Jr., P.A., which happens to be a Professional Association, isn't it, sir?

Record at 210.

The plaintiffs introduced Federal Aviation records at trial which reflect that as of April 5, 1993, an aircraft Model SIAI Marchetti SF260, was registered to Guy Jones, Jr., P.A. The trustee stated that Jones testified in an August 1993 deposition that he transferred his ownership in the Marchetti to John Bolton in May 1991. The plaintiffs introduced evidence of a bill of sale that purports to reflect that title to the Marchetti aircraft was transferred from the P.A. to John Bolton on June 1, 1992, which is within one year of the petition date.

**1000**

The plaintiffs also introduced into evidence a check dated August 25, 1992, written by Jones on one of the P.A.'s bank accounts made payable to John Bolton in the amount of $1,251.54. The trustee testified that Jones stated at the first meeting of creditors that this check was for the annual inspection of the Marchetti aircraft. The plaintiffs also introduced a check dated October 1, 1992, in the amount of $608.02 made payable to Fleeman Aviation, Inc. The trustee testified that Jones stated at the first meeting of creditors that this check was for repairs to the Marchetti aircraft.

The trustee testified that the debtor acknowledged flying the Marchetti to St. Louis in April or May 1993. The plaintiffs also introduced evidence of credit card charges from October and December 1992 and January and February 1993 that Jones signed when he purchased fuel at Conway Aviation for use in the operation of the Marchetti. Stevenson, manager of the Conway Airport, testified that she had seen Jones flying the Marchetti during these same periods of time.

Jones offered no credible evidence to rebut any of the plaintiffs' evidence. Jones argues in his brief that the evidence is not sufficient to establish that either of the debtors owned an interest in the Marchetti on the date the petitions were filed or within one year of that date. The argument is not persuasive. The evidence of the P.A.'s ownership of the aircraft both before and after the date the petitions were filed is quite persuasive. Jones's possession and frequent use of the aircraft in 1992 and 1993 is inconsistent with the purported transfer by bill of sale in 1991. The burden shifted to Jones to come forward to explain these inconsistencies, which he declined to do.

### Unexpired Leases

#### A. Airport Hangar Lease

Schedule G of the bankruptcy petition requires a debtor to list all unexpired leases. The plaintiffs introduced evidence that in December 1989, Jones, on behalf of the P.A., executed a written lease of an airplane hangar at the Conway Airport. The lease was for a term of one year, and was used to store the Marchetti aircraft. The written lease expired in December 1990. Stevenson, manager of the Conway Airport, testified that she forwarded another written lease to Jones, which he declined to sign; however, the debtor and the airport continued the lease on an oral month-to-month basis. Jones continued to pay the monthly lease payments until a few months before the trial. Stevenson testified that in March 1993, she forwarded another written lease to Jones, which he also refused to sign. She testified that:

> He said that he would be in contempt of Court if he signed a lease now, and that after everything was settled that he—that if we would go ahead and allow him to keep the plane there, that he would pay on a monthly basis as he had been doing in the past. And I checked with legal and they said that would be fine. He said that after this was—after the bankruptcy thing was over, that he would sign a lease. And he said that he would be in contempt of Court if I took his plane out of the hangar. So I checked with legal and they said that was fine, go ahead and leave it in the hangar.

Record at 100.

Jones did not disclose the existence of the hangar lease on either of the bankruptcy petitions. The failure to schedule the hangar lease aided in the concealment of the P.A.'s ownership of the Marchetti aircraft discussed previously.

Jones argues in his brief that the existence of the hangar was disclosed in the first meeting of creditors. However, this argument is not supported by the record. The trustee, when asked by debtor's counsel whether the hangar lease was discussed at the first meeting, said he did not recall the matter being discussed at that time. The trustee stated that a month or so before the trial the hangar lease was discussed between counsel, at which time Jones's counsel told the trustee that Jones intended to stop paying the hangar lease payments. Jones offered no evidence to explain his failure to schedule the hangar lease.

## B. *Lease of 1422½ Caldwell*

Jones maintained his law office in a building located at 1422 Caldwell in Conway, Arkansas. Robin Jones,[1] a former legal secretary to Jones, testified that as of the date of the trial in October 1993, she was living at 1422½ Caldwell, in a two story building located behind the P.A. office building. She testified that she has lived at 1422½ Caldwell for about two and one-half years. Robin Jones paid Jones $120.00 per month for rent while she worked for him as a legal secretary and paid Jones $250.00 per month for rent after she stopped working for Jones. She testified that she always paid her rent to Jones in cash and has continued to pay monthly rent payments to Jones since the filing of the bankruptcy petitions.

The trustee testified that at the first meeting of creditors he asked Jones what assets were in the Guy Jones, Jr., Employee Pension Trust and Jones responded that one of the assets was the office building, which includes both buildings located at 1422 and 1422½ Caldwell. The debtor argues in his brief that since the Guy Jones, Jr., P.A., Employees Pension Trust owns the property, neither Jones nor the P.A. is required to schedule the lease. This argument has been discussed previously regarding the bank accounts and is rejected here for the same reasons.

## C. *Lease of Property Located at 1507 Caldwell*

Schedule G of the bankruptcy petition requires a debtor to list all unexpired leases. The plaintiffs introduced evidence that Donna Stephens (Stephens) leased an office building from the P.A. The office building is located at 1507 Caldwell and is listed as an asset on the P.A.'s schedules. The evidence established that Stephens leased the property for $225.00 per month and she subleased a portion of the property to Harold Helton (Helton) for $225.00 per month. Helton testified that he subleased the property from Stephens both before and after the bankruptcy petition was filed and paid Stephens by checks made payable to "[Stephens] and Guy." Jones's former secretary, Robin Jones, testified that she recalled receiving checks from Stephens prior to the petition date, but did not recall if she received checks postpetition.

Neither Jones nor the P.A. disclosed the existence of the unexpired lease on their petitions. The trustee testified that he has not received any rent payments from Jones postpetition. Jones offered no credible evidence to explain his failure to schedule the existence of this unexpired lease.

### *Wachtendorf Lots*

Schedule A of a bankruptcy petition requires a debtor to list all real property in which the debtor has any legal, equitable or future interest on the date the petition is filed. The plaintiffs introduced a quitclaim deed dated August 12, 1991, in which Brian Lee Wachtendorf, as grantor, conveyed his interest in "Lots 3, 4, and 5 and north 25 feet of Lot 6 Block 12, Daviess and Garvin's Annex to the city of Conway, Arkansas," to Jones, as grantee. The trustee discovered the deed while conducting a search of the real property records in Faulkner County, Arkansas. The trustee also testified that these lots are reflected on Jones's real property assessment.

Jones's schedules do not reflect ownership of the Wachtendorf lots. The trustee testified that Jones stated in an August 1993 deposition that the only real property he owned was the Meadowlake Road property and the office building located near the P.A. office building. The debtor argues in his brief that the existence of these lots was disclosed at the first meeting of creditors, however, the record does not support this argument. Jones failed to offer evidence to explain his failure to schedule these lots, nor have his schedules been amended to reflect an ownership interest in this property.

### *Prepetition Payments to Creditors*

■ Question 3(b) requires the debtor to list all payments made within one year of the bankruptcy petition to or for the benefit of a creditor who is an insider. Question 10 re-

---

1. Robin Jones is unrelated to Guy Jones, Jr.

quires the debtor to list all property transferred outside the ordinary course of business or financial affairs of the debtor within one year of the petition date. The P.A.'s schedules reflect "none" in response to Questions 3(b) and 10.

The plaintiffs introduced into evidence a check dated June 2, 1992, signed by Jones drawn on the P.A.'s First State Bank checking account made payable to "Worthen National Bank" in the amount of $3,445.00. The check was endorsed by Amanda Jones, who was identified as Jones's daughter. The trustee testified that Jones stated at the first meeting of creditors that the check was for his daughter's college tuition.

The plaintiffs also introduced into evidence a check dated August 25, 1992, signed by Jones drawn on the P.A.'s First State Bank checking account made payable to "John Bolton" in the amount of $1,251.54. The trustee testified that Jones stated at the first meeting of creditors that this check was for the annual inspection of the Marchetti aircraft.

The plaintiffs also introduced into evidence a check dated October 1, 1992, signed by Jones drawn on the P.A.'s First State Bank checking account made payable to "Fleeman Aviation, Inc." in the amount of $608.02. The trustee testified that Jones stated at the first meeting of creditors that this check was for repairs to the Marchetti aircraft.

The plaintiffs also introduced into evidence a check dated October 16, 1992, signed by Jones drawn on the P.A.'s First State Bank checking account made payable to "Fleeman Aviation" in the amount of $617.14. The trustee testified that Jones stated at the first meeting of creditors that this check was for repairs to the Marchetti aircraft.

None of the transfers listed above appear to be in the ordinary course of the business of Guy Jones, Jr., P.A. Jones argues that since these payments were fully disclosed at the first meeting of creditors, his failure to schedule the payments was not intentional and should be overlooked. However, the fact that Jones discussed the payments when confronted with the evidence of their existence does not justify his failure to answer Questions 3(b) and 10 truthfully when he filled out the petitions.

## DISCUSSION

### 11 U.S.C. § 727(a)(4)(A) and (a)(7)

#### (False Oath)

■ The debtor's explanations for the omissions and inaccuracies in the schedules are all contained in his counsel's brief. The debtor chose not to testify at trial and not to offer the testimony of any witnesses. The Bankruptcy Code requires a debtor to fully complete the schedules and statements of affairs under oath. Statements made with reckless indifference to the truth are regarded as intentionally false. *Bold City VII, Ltd. v. Radcliffe (In re Radcliffe),* 141 B.R. 1015, 1021 (Bankr.E.D.Ark.1992). Omissions from the schedules qualify as a false oath if they are made knowingly and with fraudulent intent. *Ray v. Graham (In re Graham),* 111 B.R. 801, 806 (Bankr.E.D.Ark.1990). The intent must be actual not constructive, but intent may be proven by circumstantial evidence or by inferences drawn from a course of conduct. *McCormick v. Security State Bank,* 822 F.2d 806, 808 (8th Cir.1987); *Pereira v. Checkmate Communications Co. (In re Checkmate Stereo & Elecs., Ltd.),* 9 B.R. 585 (Bankr.E.D.N.Y.1981), *aff'd,* 21 B.R. 402 (E.D.N.Y.1982).

The evidence here establishes a clear and unmistakable pattern of untruthfulness in Jones's answers to many of the questions required to be answered by the schedules. None of the arguments advanced by Jones's counsel in defense of Jones's action are persuasive and many of the arguments are not supported by evidence in the record.

Jones's discharge will be denied pursuant to 11 U.S.C. § 727(a)(4)(A) and (a)(7) because the omissions and inaccuracies discussed herein were made intentionally and with fraudulent intent.

### II

### 11 U.S.C. § 727(a)(2)(B)

#### (Conversion)

The plaintiffs introduced evidence that Jones converted several items of property of the estate postpetition.

### Marshall and Carol Gordon Promissory Note

Jones's failure to schedule the Gordons' note receivable has previously been discussed. The Gordons continued to make their monthly note payments in the sum of $86.00 directly to Jones's account at First National Bank. Jones's schedules represented that the balance of this account was $1,100.00 on the date the petition was filed and in May 1993 Jones wrote a check to the trustee in the amount of $1,100.00. However, the June 1993 bank statement reflected an ending balance of $420.22, which included a prepetition balance and postpetition deposits from the Gordons' note receivable.

The plaintiffs also introduced evidence of Jones's Conway Country Club dues being automatically withdrawn from this same account postpetition. Two payments of $27.50 each and four payments of $29.29 each were withdrawn postpetition. The ending balance on the August 1993 bank statement was $555.21 and the trustee testified that the account balance has not been turned over to him.

Jones argues that he disclosed the existence of this bank account where the Gordons' payments were deposited and also argues that the postpetition payments from the Gordons were fully disclosed at the first meeting of creditors. Although the bank accounts were discussed, the record in this case does not support Jones's assertion that he disclosed the receipt and conversion of the Gordons' postpetition payments. Jones did not offer evidence to explain his failure to turn over the balance of the account to the trustee, nor to explain why he permitted the Conway Country Club membership dues to be paid postpetition with property of the estate.

### Lease Payments from Robin Jones

Jones's failure to schedule the unexpired lease of real property to Robin Jones for the property leased at 1422½ Caldwell has been previously discussed. Robin Jones testified that she worked for Jones as a legal secretary in the P.A.'s office from 1990 through April 1993. She testified that she paid Jones rental payments in cash in the sum of $125.00 until she stopped working as a legal secre-

tary for Jones in April 1993, when she began paying rental payments of $250.00 per month. She testified that she stopped paying the postpetition rental payments to Jones beginning with the September 1993 payment, which she paid to the trustee.

Jones argues in his brief that since the Guy Jones, Jr., P.A., Employees Pension Trust owns the property, neither Jones nor the P.A. is required to schedule this property and, therefore, the lease payments are not property of the estate. This is the same argument that has been discussed previously and is rejected here for the same reasons as previously stated. Jones offers no credible evidence to explain or justify his conversion of the postpetition rent payments from Robin Jones.

### Prepetition Accounts Receivable

The P.A.'s schedules listed prepetition accounts receivable in the amount of $335,000.00. Jones was directed by the trustee to deposit prepetition accounts receivable into an existing account at Worthen Bank and turn over his prepetition attorney's fees as they were collected postpetition. Contrary to the trustee's instructions, the debtor opened a new account on November 30, 1992, at First Community Bank, Conway, Arkansas, styled Guy Jones Jr., P.A., Escrow Account with a $15,000.00 check from Chrysler Corporation payable to "Bracy Hurd & Guy Jones, Jr., her attorney."

From November 30, 1992, through January 27, 1993, the debtor made deposits of payments received in settlements of lawsuits filed prepetition totaling $90,351.33. The debtor disbursed the sum of $40,800.00 to his clients. On December 18, 1992, the debtor withdrew $1,751.33, and on March 22, 1993, the debtor withdrew $19,150.00 from this account.

Robin Jones, who worked as a legal secretary for Jones in the P.A.'s office, testified regarding the receipt of accounts receivable from Jones's clients. Robin Jones testified that she deposited accounts receivable payments that she received after the petition was filed into a bank account at First Community Bank.

The trustee has demanded an accounting of fees received by both debtors postpetition

and Jones's response has been to refuse to account for the fees invoking his Fifth Amendment privilege and citing the attorney/client privilege. Jones did not offer any defense or justification for not turning over these attorney's fees received postpetition to the trustee, except that no separate order exists which directs him how to divide the monies received.

## DISCUSSION

 Similar to a complaint under 11 U.S.C. § 727(a)(2)(A), an objecting creditor must prove that the debtor transferred property of the estate with intent to hinder, delay or defraud a creditor. 4 *Collier on Bankruptcy* ¶ 727.02 (Lawrence P. King ed., 15th ed. 1994). Fraudulent intent may, however, be established by "circumstantial evidence or by inference drawn from a course of conduct." *Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 753–54 (9th Cir.1985); *In re Radcliffe*, 141 B.R. at 1021; *In re Locke*, 50 B.R. at 452. The evidence establishes a pattern of fraudulent conduct with regard to unauthorized transfers of property of the estate consistent with Jones's conduct in other aspects of these two cases. The plaintiffs have met their burden of proof and Jones declines to offer any credible evidence in defense. Therefore, Jones's discharge will be denied under 11 U.S.C. § 727(a)(2)(B) for postpetition conversion of property of the estate.

## III

### *11 U.S.C. § 727(a)(2)(A)*

#### *(Concealment of Assets)*

 The same evidence discussed in sections I and II above, is also sufficient to establish that Jones has concealed property of the estate in violation of 11 U.S.C. § 727(a)(2)(A). The evidence regarding the debtors' interests in bank accounts, the Stephens' Account, the Gordons' note receivable, lease payments from Robin Jones, the Cessna 150 aircraft, the Marchetti aircraft, and the Wachtendorf lots is also sufficient to establish a prima facie case that Jones concealed these same assets from creditors and the trustee. The burden shifted to Jones to explain why these assets were not included

as property of the estate, and he failed to meet his burden. *See In re Freedman*, 693 F.2d at 51. The intent to defraud is drawn from Jones's consistent pattern of untruthfulness and his failure to explain why he has not disclosed the assets in question. *In re Radcliffe*, 141 B.R. at 1019.

Therefore, Jones's discharge will be denied pursuant to 11 U.S.C. § 727(a)(2)(A).

## IV

### *11 U.S.C. § 727(a)(4)(D)*

#### *Withholding Records from the Trustee*

 The trustee demanded that Jones produce records of all bank accounts, clients, and an itemization of accounts receivable. Jones has resisted the trustee's demands. Approximately two weeks before the trial of this action, the trustee prepared Plaintiffs' Exhibit No. 25, which identifies all the documents Jones has provided to the trustee. The trustee testified that these records are incomplete and in disarray. The plaintiffs argue that Jones's actions violate 11 U.S.C. § 727(a)(4)(D) and (a)(7) (1988).

Jones argues that the plaintiffs have not met their burden of proof. Jones's argument is not persuasive. The trustee testified concerning Jones's failure to turn over complete records. He stated that the records were insufficient to explain Jones's and the P.A.'s financial conditions. The burden shifted to Jones to prove the records were sufficient. Section 727(a)(4)(D) provides, in relevant part that if a debtor withholds "from an officer of the estate entitled to possession ... any recorded information ... relating to the debtor's property or financial affairs" his discharge will be denied. 11 U.S.C. § 727(a)(4)(D) (1988). *See* 5 *Collier on Bankruptcy* ¶ 727.07 (Lawrence P. King ed., 15th ed. 1994).

The plaintiffs have established a prima facie case and Jones has not met his burden of rebutting the plaintiffs' evidence. Therefore, Jones's discharge will be denied pursuant to 11 U.S.C. § 727(a)(4)(D).

## V

#### *Other Allegations*

The plaintiffs introduced evidence of other violations of 11 U.S.C. § 727 by Jones.

These violations include failure to schedule the following assets: the Conway Country Club membership; horses pastured at the Meadowlake Road property; the sale of expensive telephones; $250,000.00 in cash stored in a safe at the P.A. office; Jones's safe located at his homestead; gun collections; scuba equipment and gear; and a prepetition account receivable from Bobby Joe Blythe. Other violations of 11 U.S.C. § 727 include additional false oaths at the first meeting of creditors and false oaths concerning Aaron Aviation, Inc.

The evidence of these additional violations has been carefully reviewed. The evidence, in some instances, is not sufficiently probative to form a basis to deny Jones's discharge. In view of the fact that plaintiffs have established many other and more significant grounds to deny Jones's discharge as stated herein, it is not necessary to discuss each of these other allegations in detail.

Therefore, for all of the reasons stated, Jones's discharge is denied. A separate judgment will be entered pursuant to Fed. R.Bankr.P. 7052.

IT IS SO ORDERED.