In the Matter of Leon GOLDBERG, Bankrupt.

SEIKO TIME CORPORATION and William Roemelmeyer, Plaintiffs,

v.

Leon GOLDBERG, Defendant.

Bankruptcy No. 79–585–BK–JAG–H.

United States Bankruptcy Court, S. D. Florida.

Nov. 19, 1979.

Robert E. Venney, Louis Phillips, Miami, Fla., for bankrupt.

Jerry M. Markowitz, Miami, Fla., for trustee.

Jason M. Berkman, Miami, Fla., for bankrupt.

## FINDINGS AND CONCLUSIONS

THOMAS C. BRITTON, Bankruptcy Judge.

In this complaint, a judgment creditor and the trustee seek denial of discharge under §§ 14c(1), (2), (4) and (7) [11 U.S.C. § 32] (C.P.No. 1). The bankrupt has answered. (C.P.No. 4) The matter was tried before me on November 8, 1979. This order is a *memorandum of decision* under B.R. 752(a).

■ Section 14c(1) denies discharge to bankrupts who have committed an offense under 18 U.S.C. § 152. In this instance, it is claimed that the bankrupt lied during his B.R. 205 examination on August 20, 1979 in testifying with respect to his residence and with respect to his income during the year 1978. The discrepancies between the apparent facts and the bankrupt's testimony on August 20 are relatively immaterial in this bankruptcy case, are relatively slight in any case and are understandable under the circumstances. I find that the bankrupt did not knowingly or fraudulently give false evidence with respect to these matters on that occasion.

Plaintiffs have charged that the bankrupt fraudulently concealed from the trustee valuable assets, including his stock ownership in a Florida corporation, National Brand Outlet, Inc. There is no evidence to sustain this charge, except with reference to the stock in the Florida corporation.

At the time of bankruptcy, the bankrupt was the vice president of and the holder of forty percent of the stock of this corporation. The corporation holds a lease on certain property which has been turned over to another party who paid between $700 and $800 a month to the corporation. The bankrupt's attorney Mr. Berkman collects this money and at the time of bankruptcy had approximately $40,000 in his possession for the corporation's benefit, most if not all of which was distributable to the stockholders.

The bankruptcy petition, filed on May 17, 1979, does not disclose this asset although the form clearly and unambiguously requires this disclosure.

■ It is the bankrupt's excuse that at the first meeting of creditors on June 6, 1979, he voluntarily disclosed this omission which was due to the oversight of his attorney and was not intentional on his part. The transcript of the first meeting, page 2, confirms this assertion. This fact demonstrates that the omission was not deliberate or fraudulent. *Collier on Bankruptcy* (14th ed.) ¶ 14.27 n. 4.

Plaintiffs have not proven a case under § 14c(1).

Plaintiffs have alleged under § 14c(2) that the bankrupt failed to keep records from which his financial condition and business transactions during 1977 and 1978 might be ascertained. During 1975, the bankrupt almost died from multiple sclerosis. This forced him into semi-retirement as a consultant for Harrell International, Inc. During 1977 he received about $65,000 from that contract and would have received a similar sum during 1978, but the plaintiff, Seiko, attached this income in January, 1978 and prevented payment. The bankrupt was compelled to surrender all his receipts and records pertaining to this income to the Supreme Court of New York in a lawsuit brought by Seiko. The records remain there.

During the two years in question, the bankrupt had four other sources of funds: (1) $30,000 a year in payments for his dis-

ability, which ended in May, 1979; (2) $300 a month Social Security; (3) $44 a month Veteran's pension; and money which he borrowed from friends. The borrowed money during the year before bankruptcy totalled approximately $40,000 he got from four or five close friends who did not demand notes, security or interest. The bankrupt's only record of these loans is a handwritten tabulation he prepared for this trial. The only records kept by the bankrupt pertaining to the other income were the memoranda furnished by the payors with the checks regularly sent to him.

During the time when the bankrupt did not expect to survive, he spent his money and ignored his taxes, with the result that an I.R.S. lien of over $125,000 was filed against him. Because of this liability, the bankrupt maintained no personal bank accounts during the years in question and either converted his receipts into cash or put these funds through his wife's two bank accounts. She was not employed nor did she have any separate income. Other than the records of his wife's checking account and occasional receipts for purchases, the bankrupt has no record of his expenditures. His tax returns have been filed and retained. They have been produced in this proceeding.

A bankrupt's duty to keep financial records depends upon the nature of his transactions. A salaried employee is not required to maintain the records which would be expected of the owner of a business. *Collier on Bankruptcy* (14th ed.) ¶ 14.32–33. I find that the records maintained by this bankrupt during the years in question were reasonably adequate to comply with the standards imposed by § 14c(2). The bankrupt's explanation for his failure to have these records in his possession is also satisfactory. The plaintiffs have failed to establish a basis under § 14c(2) for denial of discharge.

Plaintiffs have alleged under § 14c(4) that during 1978 the bankrupt transferred over $80,000 to his wife, with intent to hinder, delay or defraud his creditors. The evidence before me shows that about $74,000 was received by the bankrupt during that year and that most of that money was deposited in one or the other of his wife's two bank accounts. When the bankruptcy petition was filed in May, 1979, the bankrupt had $2,600 in total assets, so the money was either spent or diverted by the bankrupt and his wife to a safe sanctuary. In either event, during the twelve months immediately preceding bankruptcy, the bankrupt transferred virtually all monies received by him to his wife by depositing that money in her bank accounts and I find that he did so with the intent of hindering and delaying at least one creditor, I.R.S., from collecting its debt. *Collier on Bankruptcy* (14th ed.) Plaintiffs need not prove an intent to defraud more than one creditor. *Collier on Bankruptcy* (14th ed.) ¶ 14.47[1] n. 6. I conclude that plaintiffs have carried their burden of demonstrating that the bankrupt should be denied discharge under § 14c(4).

Plaintiffs have also alleged that the bankrupt should be denied discharge under § 14c(7). However, plaintiffs' allegations (Count III) failed to state any case under this section which denies discharge to a bankrupt who "has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities". In essence, plaintiffs have alleged that the bankrupt spent a great deal of money during 1978 and 1979 when he "became entitled to substantial sums of money". I conclude that plaintiffs' allegations under § 14c(7) should be dismissed with prejudice. *Collier on Bankruptcy* (14th ed.) ¶ 14.59–60.

As is required by B.R. 921(a), a separate judgment will be entered in accordance with the foregoing findings and conclusions. Costs, if any, will be taxed on motion.