**In re William Edward TOWE, aka Edward Towe and Cora Florence Towe, aka Florence Towe, Debtors.**

**UNITED STATES of America, Plaintiff,**

v.

**William Edward TOWE, and Cora Florence Towe, Defendants.**

**Bankruptcy No. 90–11695–JLP–7.**

United States Bankruptcy Court,
D. Montana,
Billings Division.

Sept. 4, 1992.

Kirk C. Lusty, Keith P. Duet, Trial Attorneys, Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Carey E. Natovich, Matovich, Addy & Keller, P.C., Billings, Mont., for defendants.

## MEMORANDUM DECISION

ROBERT L. EISEN, Bankruptcy Judge.

### I. INTRODUCTION

William Edward Towe and Cora Florence Towe, husband and wife, filed a bankruptcy petition under chapter 7 on November 14, 1990. The I.R.S. previously had audited the debtors for the tax years 1969 through 1982 and had assessed federal income tax liabilities totalling $1,054,307.52. The I.R.S. also assessed penalties and lien fees for the same period totalling $264,517.63, and interest totalling $2,482,866.37.

In an attempt to satisfy the delinquent tax liabilities of the debtors, the I.R.S. levied on certain silver dollars purportedly transferred by Mr. Towe to Grant Investments Foundation ("GIF"), and also levied on certain antique automobiles purportedly donated to Towe Antique Ford Foundation ("TAFF"). The district court found in two

separate opinions, however, that these entities were the "alter egos" of Edward Towe and that the levies were therefore proper. *GIF v. I.R.S.*, C.P. 89–126–BLG–JFB, 1991 WL 208442 (August 2, 1991); *TAFF v. I.R.S.*, 791 F.Supp. 1450 (D.Mont.1992).

The I.R.S. filed an adversary complaint on February 4, 1991, asserting that pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(4) the debtors are not entitled to a discharge, or in the alternative, that the debtors' federal tax obligations for the taxable years 1969 through 1982 are not dischargeable pursuant to 11 U.S.C. § 523(a)(1)(C). The adversary proceeding came on for trial on March 2, 3, and 4, 1992.

The court concludes that pursuant to section 727(a)(2)(A) and principles of collateral estoppel, as well as based upon independent consideration of the evidence, the discharge of Edward Towe should be denied. The court further concludes that as to Florence Towe the evidence is insufficient to support either denial of her discharge or exception of her federal tax liabilities from discharge.

## II. DISCUSSION

### A. *Denial of Discharge Under 11 U.S.C. § 727(a)(2).*

11 U.S.C. § 727 provides in pertinent part:

The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A).

### 1. Burden of Proof.

■ The burden is on the I.R.S. to prove that the debtors' conduct falls within the parameters of section 727(a)(2)(A). Fed. R.Bankr. P. 4005. It is all but settled that the burden of proof is the preponderance of the evidence standard, in view of the recent United States Supreme Court decision in *Grogan v. Garner*, 498 U.S. 279 at ——, 111 S.Ct. 654 at 661, 112 L.Ed.2d 755 (1991), where the Court held that the burden of proof for discharge exception proceedings under section 523(a) is preponderance of the evidence.

Although *Grogan* did not discuss whether this standard should also apply to denial of discharge proceedings under section 727(a)(2), the Bankruptcy Appellate Panel for the Ninth Circuit has held that it does. *In re Lawler*, 141 B.R. 425 (Bankr. 9th Cir.1992). As the panel explained:

It would be incongruous to apply a "preponderance of the evidence" standard to § 523(a) and a "clear and convincing" standard to § 727(a)(2). Such would be clearly at odds with the rationale in *Grogan.*

*Lawler*, 141 B.R. at 429 (citing *In re First Nat'l. Bank of Gordon*, 938 F.2d 1156, 1157 (10th Cir.1991). The panel also quoted from *Grogan:*

We think it unlikely that Congress, in fashioning the standard of proof that governs the applicability of [section 523(a)], would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud.

*Grogan*, 498 U.S. at ——, 111 S.Ct. at 659. Accordingly, the court finds the preponderance of the evidence standard to be applicable to actions under section 727(a)(2).[1]

### 2. Elements of Section 727(a)(2)(A) Action.

An action under section 727(a)(2)(A) requires proof of four elements. *See In re*

---

**1.** The preponderance standard, however, must be applied without undermining the "fresh start" policy of the Code. A discharge provides the honest but unfortunate debtor a new opportunity in life, unhampered by the pressure and discouragement of preexisting debt. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (citing *Local Loan Co. v. Hunt*, 292

U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). Thus, it has been said that section 727's denial of a discharge should be construed liberally in favor of the debtor and strictly against those objecting to discharge. *In re Adeeb*, 787 F.2d 1339 (9th Cir.1986) (citing *In re Devers*, 759 F.2d 751, 754 (9th Cir.1985).

*Agnew,* 818 F.2d 1284 (7th Cir.1987); *In re Essres,* 122 B.R. 422 (D.Colo.1990). The four elements are as follows:

(a) *Within One Year of Filing.*

■ Section 727(a)(2)(A) requires that the act complained of be committed within a year before the date of filing of the petition. Under the established doctrine of "continuing concealment", however, a debtor's prior concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy is within the reach of section 727(a)(2)(A). *In re Olivier,* 819 F.2d 550 (5th Cir.1987); *In re Sanders,* 128 B.R. 963 (Bankr.W.D.La. 1991); *In re Cook,* 126 B.R. 261 (Bankr. E.D.Tex.1991); *In re Serafini,* 113 B.R. 692 (D.Colo.1990); *In re Penner,* 107 B.R. 171 (Bankr.N.D.Ind.1989); *In re Syrtveit,* 105 B.R. 596 (Bankr.D.Mont.1989); *cf.* 18 U.S.C. § 3284 (for purposes of bankruptcy crime action, debtor's concealment of assets deemed continuing offense until discharge entered). Although the Ninth Circuit has yet to specifically address whether the doctrine of continuing concealment applies to actions under section 727(a)(2)(A), the court is persuaded that the doctrine does apply.

(b) *Intent to Hinder, Delay or Defraud a Creditor.*

■ Section 727 requires that the act complained of be done with the intent to hinder, delay, or defraud a creditor. Intent to hinder, delay, or defraud is rarely susceptible to direct proof. Accordingly, such intent can be established by circumstantial evidence, or by inferences drawn from a course of conduct on the part of a debtor. *See Pavy v. Chasant,* 873 F.2d 89, 91 (5th Cir.1989); *In re Essres,* 122 B.R. 422, 426 (D.Colo.1990); *In re Martin,* 88 B.R. 319 (D.Colo.1988). The objector need only show that a debtor acted with one of the

three states of mind—a showing of intent to defraud is not necessary. *In re Elholm,* 80 B.R. 964 (D.Minn.1987).

■ Additionally, section 727(a)(2)(A) requires only that a debtor intend to hinder, delay, or defraud one creditor. A plaintiff need not prove that the debtor's concealing of assets was aimed at all creditors. *See In re Adeeb,* 787 F.2d at 1343; *In re Goldberg,* 2 B.R. 15 (Bankr.S.D.Fla.1979). The final two elements of a section 727(a)(2)(A) action are:

(c) *The Act Was Done by Debtor or His Agent,* and

(d) *The Act consisted of Transferring, Removing, Destroying, or Concealing any of the Debtor's Property.*

■ A debtor need not literally conceal assets to violate section 727(a)(2)(A): "The transfer of title with attendant circumstances indicating that the bankrupt continues to use the property as his own is sufficient to constitute a concealment." *Friedell v. Kauffman (In re Kauffman),* 675 F.2d 127, 128 (7th Cir.1981), *see also In re Olivier,* 819 F.2d 550, 553 (5th Cir.1987) ("Concealing property for purposes of section 727(a)(2)(A) can be accomplished by a transfer of title coupled with the retention of the benefits of ownership").

B. *Collateral Estoppel.*

■ With this background on the showing required under section 727(a)(2)(A), I now address the collateral estoppel effect of the *TAFF v. I.R.S.* decision.[2] It is settled that the principles of collateral estoppel apply in discharge exception proceedings pursuant to 11 U.S.C. § 523(a), *see Grogan,* 498 U.S. 279, 111 S.Ct. 654, and it likewise appears to be established that the principles of collateral estoppel apply in bankruptcy proceedings

---

**2.** Debtors also filed another wrongful levy action prior to *TAFF v. I.R.S. See Grant Investment Fund (GIF) v. I.R.S.,* U.S. District Court, Dist. Mont., Billings Div.; CV 89–126–BLG–JFB, 1991 WL 208442 (August 2, 1991). The *GIF* decision is similar to the *TAFF* decision, except that the I.R.S. did not allege as it did in *TAFF* that the property levied upon was fraudulently transferred, and the court made no specific finding regarding the debtors' fraudulent intent. Thus, while the *GIF* decision collaterally estops the debtors from relitigating the issues decided there, it is not clear that those issues include finding fraudulent intent on the part of the debtors. Since such a finding is explicit in the *TAFF* decision, I need not rely on the collateral estoppel effect of the *GIF* decision.

generally. *See Id.; In re Daley*, 776 F.2d 834, 838 (9th Cir.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The use of collateral estoppel in bankruptcy dischargeability proceedings, however, is subject to the caveat that it be applied with caution, since bankruptcy courts have exclusive jurisdiction to determine nondischargeability. *See Daley*, 776 F.2d at 838; *In re Kaufman*, 85 B.R. 706 (S.D.N.Y.1988).

▆▆▆ Under the doctrine of collateral estoppel, if a party has had a full and fair opportunity to litigate an issue in a prior action, they are collaterally estopped from relitigating that issue in a subsequent action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332–33, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979). The Ninth Circuit applies the principles of collateral estoppel as described in § 27 of the Restatement of Judgments:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or different claim.

*In re Daley*, 776 F.2d at 838 (citing the Restatement (Second) of Judgments § 27 (1982)). There are exceptions to this general rule, such as where the burden of proof differs substantially between the first and the second action, where the party sought to be precluded has a much greater incentive to litigate the issue in the second action, or where public policy or other equitable considerations compel a reexamination of the issue. *See* Restatement (Second) of Judgments § 28 (1982). None of the potential exceptions to the general rule are applicable here.

The debtors do not dispute the fact that they had a full and fair opportunity to litigate the issues raised in their wrongful levy action. Debtors do argue, however, that collateral estoppel is inapplicable to this action because the issues already litigated differ from the issues in this case. A review of *TAFF v. I.R.S.*, however, re-

veals that the necessary identity of issues does in fact exist.

1. Use of TAFF to Conceal/Transfer Property.

▆▆▆ When the I.R.S. levied on 91 Ford antique automobiles valued at over $1.4 million to satisfy the delinquent federal tax liabilities of debtors on July 31, 1989, title to the automobiles was held by TAFF. Mr. Towe had begun purchasing antique automobiles in the early 1950's. Around 1980, Mr. Towe, allegedly in an effort to keep the automobile collection together in perpetuity, began placing titles of the antique automobiles in the name of TAFF, a nonprofit, charitable corporation created by Mr. Towe in 1980.

The district court concluded that the levies were justified because TAFF was in fact the alter ego and the nominee of Mr. Towe, specifically finding that:

> TAFF paid no consideration for the automobiles; Edward Towe transferred the automobiles in anticipation of the occurrence of federal tax liabilities; he continues to exercise control over the antique automobiles; a close relationship exists between Edward Towe, his family, and TAFF; and they continue to enjoy the benefits of the transferred property.

*TAFF v. I.R.S.*, Conclusions of Law, ¶ 5. The court also concluded that the I.R.S. levy on the automobiles was proper because the transfer of the automobiles was fraudulent under the Uniform Fraudulent Conveyance Act (UFCA) as adopted under Montana law, and should be set aside. The UFCA standard for setting aside fraudulent transfers is substantially identical to the denial of discharge standard under section 727(a)(2)(A).

The UFCA provides that:

> Every conveyance made ... with actual intent ... to hinder, delay, or defraud either present or future creditors is fraudulent....

The court found that the I.R.S. had met their burden of proof under the UFCA, stating that:

> Based upon the Court's Findings of Fact, the Court concludes that the alleged conveyance of the antique automobiles from

Edward Towe to TAFF on October 20, 1981, was done with the intent to hinder, delay, or defraud the United States.

*Id.* at ¶ 6. The court in *TAFF v. I.R.S.* thus specifically found not only that Mr. Towe transferred the antique automobiles to TAFF with the intent to defraud the I.R.S., but also that the Towes retained control over the automobiles allegedly held by TAFF within the year prior to the filing of the Towes' bankruptcy petition. These findings satisfy the requirements of section 727(a)(2)(A) and collaterally estop Mr. Towe from relitigating the issues.

The court notes that the decision in *TAFF v. I.R.S.* was not filed until the day after the last day of the trial in this adversary proceeding. Thus, while the collateral estoppel effect of the *GIF v. I.R.S.* decision was before the court at trial, the *TAFF v. I.R.S.* decision was not. However, the debtors were given the opportunity to address the collateral estoppel implications of the *TAFF v. I.R.S.* decision in their post-trial brief, in which they argued at length that neither decision of the district court had decided the issues, at least not all of them, to be decided in this adversary proceeding. The court therefore finds that not only did the debtors have a full and fair opportunity to litigate the issues in the *TAFF* case, but also had ample opportunity to litigate the collateral estoppel effects of that decision.

■ The court further notes that the defendants' argument that collateral estoppel effect should not be given to the district court opinions because defendants have appealed both of them is without merit.

The bare act of taking an appeal is no more effective to defeat preclusion than a failure to appeal. The established rule in federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal.

18 Wright, Miller & Kane, *Federal Practice and Procedure; Jurisdiction 2d,* § 4433 at 308 (1981); *See also Robi v. Five Platters, Inc.,* 838 F.2d 318, 327 (9th Cir. 1988).

### C. *Independent Findings.*

■ Even if collateral estoppel were inapplicable in this case, the court finds by a preponderance of the evidence that Mr. Towe concealed assets with the intent to hinder or defraud the I.R.S., and therefore that the denial of his discharge is justified under section 727(a)(2)(A). As discussed above, debtors held automobiles purportedly donated to TAFF with the purpose of preventing the I.R.S. from levying on the automobiles, while at the same time retaining effective ownership of the automobiles.

A similar ploy was used by Mr. Towe with regard to 6,040 silver dollars. The debtors each purchased a one-half interest in 12,081 coins by July 1978, and Mr. Towe allegedly transferred his interest in the coins to GIF, an investment partnership founded in 1955 by Mr. Towe for the benefit of family and friends. Mr. Towe acts as general manager.

After trial of the wrongful levy action brought by the debtors against the I.R.S., the district court found that, like the *TAFF v. I.R.S.* case, the levy placed by the I.R.S. on the coins was not wrongful because GIF was the "alter ego" of Mr. Towe. Specifically, the court stated:

As manager of GIF, Edward Towe has used the fund to discharge personal obligations, *to shield himself from personal liabilities,* and for personal gain (emphasis added).

Given Edward Towe's egregious and flagrant pattern of self-dealing, his co-mingling of his personal affairs with those of GIF, his use of GIF assets to discharge his own debts, his manipulation of GIF for his own personal gain, his complete dominance and control of GIF, and the prospect of no end to such abuse of his position as manager of GIF, this court finds that GIF is the "alter ego" of Edward Towe.

*GIF v. I.R.S.,* ¶¶ 20 and 24. The defendants did not list the coins or the automobiles on their Schedules, and on their Statement of Financial Affairs answered "no" to the question "is any other person holding anything of value in which you have an interest?"

After consideration of the district court findings and the evidence presented in the trial of this proceeding, the court agrees with the above findings reached by the district court. While such findings do not in themselves satisfy the elements of section 727(a)(2)(A), they do support the inference that within the year prior to the filing of the petition in bankruptcy Mr. Towe engaged in a course of conduct characterized by concealing assets with intent to prevent the I.R.S. from collecting legitimate tax debts. The inference that Mr. Towe intended to prevent the I.R.S. from levying on his assets is also supported by the manipulation by Mr. Towe of compensation he received from First National Bank and Trust of Wibaux in his capacity as President (since 1987) and Director (since 1956). When Mr. Towe was served with Notices of Levy by the I.R.S. in the mid–1980's, demanding *inter alia* that the bank turn over Mr. Towe's director's fees, Mr. Towe immediately announced at the bank that he would no longer receive director's fees as he had up until then on a regular basis. The I.R.S. never received director's fees or any other funds in response to the levies.

However, at various times while the levies continued in effect, debtors received as compensation from the bank "subsistence checks," a rent-free apartment for two years, payment of personal telephone and water bills, the use of three automobiles, a $300 monthly "consulting fee" to Mrs. Towe, as well as an eventual resumption of the payment of director's fees to Mr. Towe. Mr. Towe also received a $5,000 payment in 1989.

Additionally, as the director of a bank, Mr. Towe was required by federal law to hold 10 shares of "director qualifying shares" in the bank in his own right. Although Mr. Towe repeatedly denied to the I.R.S. that he owned any shares, he had on many occasions assured the federal banking authorities that he did in fact own the required shares. The court is persuaded of the veracity of the testimony at trial of Julie Zukoski, who testified that she heard Mr. Towe explain at an examination of the bank on November 29, 1989, by the Office of the Comptroller of Currency, that "he owned the shares, [but denied owning them because] if the IRS knew that he owned the shares outright, they would immediately seize them."

Mr. Towe has not denied making these statements, which were made within one year of the date of filing, November 14, 1990. The shares were not listed on the original bankruptcy schedules, ostensibly because Mr. Towe believed he did not own them. The court is persuaded, however, that Mr. Towe in fact believed he owned the shares and concealed them with the intent to defraud the I.R.S., thus serving as a further and independent ground for denial of Mr. Towe's discharge.

### D. *Non–Dischargeability as to Mrs. Towe.*

 The I.R.S. failed to show by a preponderance of the evidence that the discharge as to Mrs. Towe should be denied, or that her federal tax liabilities should be excepted from discharge. The evidence shows that she accepted free rent from the bank and other remuneration, and generally enjoyed the benefits of her husband's actions; that she offered no help to the I.R.S. in its attempts to levy against the Towes' assets; and that she signed the bankruptcy petition.

However, fraudulent intent under section 523(a)(2) or under section 727(a)(2) cannot be imputed from the mere fact that a wife derived benefit from her husband's conduct, or even that she had knowledge of his misconduct. *See In re Mart,* 75 B.R. 808 (S.D.Fla.1987). The court notes that the result might be different if the Towes were actual business partners, and Mr. Towe perpetrated his fraud in the ordinary course of partnership business. *See In re Ledford,* 970 F.2d 1556 (6th Cir.Tenn.1992).

## III. CONCLUSION

The complaint in this adversary proceeding brought by the I.R.S. for an order denying the discharge as to Mr. Towe pursuant to section 727(a)(2)(A) will be grant-

ed. The complaint will be denied as to Mrs. Towe.

## IV. ORDER

IT IS ORDERED that, pursuant to 11 U.S.C. § 727(a)(2)(A), the complaint for an order denying the discharge of the debtor William Edward Towe is GRANTED.

IT IS FURTHER ORDERED that the complaint for an order denying the discharge of the debtor Cora Edward Towe pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(4), or for an order excepting certain federal tax liabilities from discharge pursuant to 11 U.S.C. § 523(a)(1)(C), is DENIED.