In re Guy Benny BROWN, Debtor.

Ronald D. GULLICKSON, Appellee,

v.

Guy Benny BROWN, Appellant.

No. 95–4021–RDR.
Bankr. No. 92–41284–7.

United States District Court,
D. Kansas.

March 29, 1996.

F. Stannard Lentz, Carl R. Clark, Lentz & Clark, P.A., Overland Park, KS, for Guy Benny Brown.

Robert D. Kroeker, Steven M. Leigh, Robert D. Lantz, Martin, Leigh & Laws, Kansas City, MO, for Ronald D. Gullickson.

### *MEMORANDUM AND ORDER*

ROGERS, District Judge.

This is a bankruptcy appeal arising from an adversary proceeding filed to deny discharge. The adversary proceeding was filed by the appellee Ronald Gullickson, a creditor of the appellant, debtor Guy Brown. Brown challenges the bankruptcy court's order denying discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(3) and (a)(4)(A).

The following facts are undisputed. Gullickson, Brown and Harold Best were the sole shareholders in Sunflower Bolt and Nut Company ("Sunflower") and Hydraulic Fabricators of Kansas, Inc. ("Hyfab") prior to November 15, 1989. On that date, Gullickson reached a stock purchase and real estate sales agreement with Brown, Best, Sunflower and Hyfab, wherein he agreed to sell all of his stock. Later, Gullickson sued the other parties to the agreement alleging a breach of the stock agreement. On June 17, 1992, Gullickson obtained a default judgment against Sunflower and Hyfab in the amount of $120,921.07 plus interest. On June 29,

1992, Gullickson obtained a personal judgment against Brown and Best for the same amount.

Four days later, on July 3, 1992, the Mission Bank loaned $50,000.00 to Sunflower and Hyfab. To obtain this loan, Brown and his wife pledged certain vintage automobiles. Another four days later, on July 7, 1992, Sunflower, Hyfab, Brown and Best each filed a petition in bankruptcy under Chapter 11. Gullickson was aware of the filing. On December 9, 1992, Brown's and Best's cases were converted to Chapter 7. On February 5, 1993, Sunflower's and Hyfab's cases were converted to Chapter 7.

In a financial statement dated April 2, 1990, Brown and his wife listed their total assets as $1,181,150.00 and their total liabilities as $330,261.00. In a financial statement dated September 1, 1991, Brown and his wife listed their total assets as $1,153,750.00 and their total liabilities as $319,500.00. In a financial statement dated May 20, 1992, Brown and his wife listed their total assets as $734,225.00 and their total liabilities as $395,-500.00.

Only two months after the last financial statement, in bankruptcy schedules filed July 23, 1992, Brown listed *his* total assets, excluding his wife's salary and pension plan, as $217,650.00 and his liabilities as $644,009.00. The bankruptcy schedules list the value of Brown's vintage automobiles as $25,800.00. In a September 1, 1991 financial statement, the vintage automobiles and accessories are valued at $201,400.00. No amended schedules were filed by Brown.

The bankruptcy court made the following additional factual findings. The vintage cars were Brown's only unencumbered asset at the time of the $50,000.00 loan obtained from the Mission Bank. The cars were collateral for the loan. The loan proceeds were not accounted for specifically. The money went to Sunflower and Hyfab, not Brown individually. Some of the money was spent for the retainer of the attorneys who filed the Chapter 11 petitions for Brown, Best, Sunflower and Hyfab. An attorney for the Mission Bank testified that Brown stated he did not want Gullickson or anyone else to get their hands on his auto collection.

The assets of Sunflower and Hyfab were sold to a new corporation owned by the parents of Brown and Best around the middle of 1994.

Brown failed to list a 1962 Chevrolet in his bankruptcy schedules. He also listed a 1957 Ford and a 1958 Ford as jointly owned with his wife, although on June 4, 1992 the cars were titled solely in Brown's name.

In 1990–91, Brown sold four of his vintage automobiles with car parts that had been valued at $44,000.00 on earlier financial statements. Brown kept no records of the sales and did not list the sales as transfers on his bankruptcy schedules.

At the time of Brown's bankruptcy filing, Brown's partnership with Best owned the Sunflower building. However, the partnership was listed in Brown's bankruptcy schedules as having no value. Brown testified that the partnership probably had some value, although he never amended his schedules to provide a valuation. The Sunflower building was foreclosed upon and the liens on the property exceeded the price, so that nothing was left for distribution to Brown and Best.

The bankruptcy court denied discharge in this case on three grounds found in 11 U.S.C. § 727. Section 727(a)(2)(A) provides:

> The court shall grant the debtor a discharge, unless— ... (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition;

The bankruptcy court found that encumbering the vintage car collection within four days of filing bankruptcy was concealing property with the intent to hinder, delay or defraud a creditor.

The court also found that denial of discharge was justified under § 727(a)(3). This subsection provides:

> The court shall grant the debtor a discharge, unless— ... (3) the debtor has

concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

The court determined that this provision was violated when Brown failed to maintain records regarding the sales of automobiles.

Finally, the court found that denial of discharge was warranted under § 727(a)(4)(A). This subsection provides:

The court shall grant the debtor a discharge, unless— ... (4) the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account;

The bankruptcy court found that this subsection was violated because the bankruptcy schedules submitted by Brown: omitted a 1962 Chevrolet; did not list the "transfer" to joint ownership with his wife on two cars; and failed to list a value for Brown's interest in the partnership with Best. The bankruptcy court also noted that the schedules did not list any of the four cars sold in 1990 or 1991, although the court admitted it was impossible to determine whether any of the sales occurred within a year of filing the petition for bankruptcy.

■ Creditors have the burden of proving debtors are not entitled to a discharge. *Farmers Co-op. Ass'n v. Strunk,* 671 F.2d 391, 394–95 (10th Cir.1982). Creditors objecting to discharge must prove their case by a preponderance of the evidence. *In re Serafini,* 938 F.2d 1156, 1157 (10th Cir.1991). On review, this court gives great weight to the opportunity of the bankruptcy court to assess the credibility of the testifying parties and witnesses. *In re Chalik,* 748 F.2d 616, 619 (11th Cir.1984); *Carini v. Matera,* 592 F.2d 378, 381 (7th Cir.1979); *In re Nelson,* 561 F.2d 1342, 1347–48 (9th Cir.1977).

■ We review the bankruptcy court's findings to determine whether they are clearly erroneous; however, legal determinations are subject to plenary review. *Turney v. FDIC,* 18 F.3d 865, 868 (10th Cir.1994).

Mixed questions of fact and law involving primarily a consideration of legal principles are reviewed *de novo*; mixed questions involving primarily a consideration of facts are reviewed by a clearly erroneous standard. *In re Wes Dor, Inc.,* 996 F.2d 237, 241 (10th Cir.1993). Legal conclusions drawn from facts are also reviewed *de novo. In re Golf Course Builders Leasing, Inc.,* 768 F.2d 1167, 1169 (10th Cir.1985).

### § 727(a)(2)(A)

■ The elements to proving this exception to discharge are: 1) a concealment or transfer of property has occurred; 2) the property was property of the debtor; 3) the concealment or transfer occurred within one year of the filing of the petition; and 4) the concealment or transfer was done with intent to hinder, delay or defraud a creditor. *In re Hadley,* 70 B.R. 51, 53 (Bankr.D.Kan.1987); see also, *In re Caparelli,* 131 B.R. 895, 897 (Bankr.S.D.Fla.1991).

■ Brown contends on appeal that there was insufficient proof of intent to hinder, delay or defraud a creditor. We apply a clearly erroneous standard to the bankruptcy court's finding on this issue. See *In re Carey,* 938 F.2d 1073, 1077 (10th Cir.1991); *In re Calder,* 907 F.2d 953, 956 (10th Cir.1990).

■ The Tenth Circuit in *Carey,* 938 F.2d at 1077, discussed some of the principles relevant to finding the requisite intent to hinder, delay or defraud a creditor under § 727(a)(2):

To deny a discharge under § 727(a)(2), a court must find *actual* intent to defraud creditors. See *[Matter of] Bowyer,* 916 F.2d [1056] at 1059 [ (5th Cir.1995) ]; *In re Smiley,* 864 F.2d 562, 566 (7th Cir.1989). "[T]he desire to convert assets into exempt forms by itself" does not constitute actual intent to defraud, see *In re Johnson,* 880 F.2d 78, 81 (8th Cir.1989); "extrinsic evidence of fraudulent intent is required to establish fraud." *Id. See also Smiley,* 864 F.2d at 566; *Ford [v. Poston],* 773 F.2d [52] at 55 [ (4th Cir.1985) ]; *In re Adlman,* 541 F.2d 999, 1004–05 (2d Cir.1976). *Cf. Farmers Co-op. Ass'n v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982) (fraudulent intent

to conceal assets "may be established by circumstantial evidence, or by inferences drawn from a course of conduct").

The court mentioned several "specific indicia of fraud" which courts may look at to infer fraudulent intent. *Id.* These included: concealment of prebankruptcy conversions; conversion of assets immediately prior to filing bankruptcy; gratuitous transfers of property; continued use of transferred property; transfers of property to family members; obtaining credit to purchase exempt property; conversion following entry of a large judgment against the debtor; a pattern of sharp dealing prior to bankruptcy; conversions of property rendering the debtor insolvent; and the monetary value of converted assets. *Id.*

■■ The bankruptcy court found the following indicia of fraud in this case. The previously unencumbered car collection was used as security for a loan just four days after Gullickson obtained a judgment against Brown and just four days before Brown filed for bankruptcy. Brown continued to use the encumbered property and was able to exempt the entire auto collection. Brown also benefited from the loan because the loan proceeds were given to corporations of which he was a major stockholder and were used to pay his attorneys. Cf., *In re Moore,* 104 B.R. 473 (Bankr.M.D.Fla.1989) (sale of personal car and use of money to purchase corporate car used by debtor warrants denial of discharge). In addition, the court found that discrepancies in the valuation of property contained on financial statements as compared to Brown's bankruptcy schedules and the omission of assets from the bankruptcy schedules showed a pattern of nondisclosure which supported a finding of fraudulent intent.

■■ Finally, and more directly, the bankruptcy court found that Brown told the attorney for the Mission Bank that he wanted to prevent Gullickson and other creditors from reaching his car collection. Such evidence has been considered strong proof of intent to hinder, delay or defraud a creditor. See *In re Kulwin,* 187 B.R. 341, 348 (Bankr.D.Kan. 1995) (citing *In re Adeeb,* 787 F.2d 1339, 1343 (9th Cir.1986)).

On appeal, Brown argues that the differences between the financial statements and the bankruptcy schedules can be partially explained by the exclusion of his wife's salary and pension plan. Brown asserts that the 1962 Chevrolet was inadvertently left off the bankruptcy schedule and that this omission was corrected during the § 341 meeting with the Trustee. Brown further claims that listing the 1957 and 1958 Ford autos as jointly titled in the bankruptcy schedules was also an inadvertent error.

Finally, Brown contends that the "transfer" made for the $50,000.00 loan was neither gratuitous nor concealed. Brown explains that in return for the security interest in the auto collection, Brown obtained a loan which assisted his companies and paid a retainer to attorneys who filed his individual bankruptcy petition. Brown also notes that there was no pattern of converting nonexempt assets to exempt assets and that the transfer did not render Brown insolvent.

After reviewing all of these circumstances, it is clear that not all of the frequently mentioned "badges of fraud" are present in this case. But, there are sufficient indications of fraud and sharp dealing that the court cannot say the bankruptcy court clearly erred in finding that Brown intended to hinder, delay, or defraud his creditors when he encumbered his car collection in return for the loan.

**§ 727(a)(3)**

■■ The bankruptcy court found that Brown failed to keep adequate records regarding sales of automobiles and, therefore, violated § 727(a)(3) which requires as a condition for discharge that debtors keep and preserve any recorded information from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances.

■■ "[I]n order to state a prima facie case under section 727(a)(3), a creditor objecting to the discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business

transactions." *Meridian Bank v. Alten,* 958 F.2d 1226, 1232 (3rd Cir.1992). The burden then shifts to the debtor to justify the loss of records or the failure to maintain records. *Id.* at 1233.

On the record before the court it appears that Brown failed to maintain records regarding the sales of certain automobiles and what happened to the proceeds of those sales. This is not disputed by the parties. The bankruptcy court also found that Brown failed to justify his failure to keep records. This finding, however, is not well-explained in the bankruptcy court's order.

■ The issue of justification is decided with reference to a reasonable person standard. *Id.* at 1231 (quoting *In re Wilson,* 33 B.R. 689, 692 (Bankr.M.D.Ga.1983)). In this case, the evidence appears undisputed that debtor's car collection was a hobby, not a business. It further appears undisputed that cash sales of antique cars were common at the sales debtor attended. Under these circumstances, it does not appear abnormal or unreasonable to fail to maintain records of the sales of automobiles. Therefore, the court shall not uphold this grounds for denying discharge to debtor.

## § 727(a)(4)

■ Finally, the bankruptcy court denied discharge because the debtor knowingly and fraudulently made a false oath or account. The falsehoods mentioned by the bankruptcy court are: debtor's omission of a 1962 Chevrolet from his schedules; his omission of a value to his interest in the Brown and Best partnership; and the transfer of two cars 33 days prior to filing bankruptcy to joint ownership with his wife. The bankruptcy court found that these misrepresentations were material to the discovery of debtor's assets and transactions. The bankruptcy court further held that, in light of a pattern of nondisclosure and failure to amend his schedules, the misrepresentations and omissions were not merely inadvertent; instead, they were knowingly and fraudulently made.

■ Debtor has argued that these errors or omissions were inadvertent. Debtor notes he admitted at trial that the cars were titled only in his name and that he overlooked the omission of the 1962 Chevrolet from the schedule of property, but mentioned it in his § 341 hearing. Debtor also contends that the partnership property was worth less than its mortgaged debt. Therefore, it was worth less than what debtor stated on the schedule, which was nothing.

■ In *In re Kearns,* 149 B.R. 189, 192 (Bankr.D.Kan.1992) the court reviewed the elements which must be proved to deny a discharge under § 727(a)(4)(A):

Two elements must be present under § 727(a)(4)(A): (1) the debtors must have knowingly and fraudulently made an oath; and (2) the debtor's oath must relate to a material fact. *In re Hadley,* 70 B.R. 51, 54 (Bankr.D.Kan.1987)....

Materiality of the false oath does not depend upon prejudice to the creditors, but rather the materiality requirement depends on whether the false oath was pertinent to the discovery of assets or past transactions. [citations omitted]....

"Detriment to a creditor need not be shown in order to establish fraudulent concealment or a false oath barring discharge." *Farmers Co-operative Ass'n v. Strunk,* 671 F.2d 391, 396 (10th Cir.1983) (citation omitted). A "recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted ... information concerned a worthless business relationship or holding; such a defense is specious." *In re Calder,* 907 F.2d 953, 955 (10th Cir.1990) (citation omitted).

We believe the alleged false oaths were material to the discovery of past assets and transactions. As noted above, the alleged absence of material harm to creditors is not dispositive of a denial of discharge claim under § 727(a)(4). See also *Chalik,* 748 F.2d at 618. Therefore, the bankruptcy court's judgment of fraudulent intent is critical on appeal. We will not reverse that determination unless it is clearly erroneous. See *Carey,* 938 F.2d at 1077.

■ Particularly given the pattern of conduct and statements regarding debtor's antique car collection, the court cannot find

the bankruptcy court's decision to be clearly erroneous. Moreover, debtor's failure to amend and correct the schedules is evidence of reckless indifference to the truth which has been considered proof of fraudulent intent. *In re Magnuson*, 113 B.R. 555, 559 (Bankr.D.N.D.1989). Therefore, the court shall not overturn the bankruptcy court's holding as to debtor's violation of § 727(a)(4).

*Conclusion*

For the above-stated reasons, the bankruptcy court's order denying discharge shall be affirmed.

**IT IS SO ORDERED.**