**In re Dana H. GREENE, Debtor.**

**CONSUMERS UNITED CAPITAL CORPORATION, Plaintiff,**

v.

**Dana H. GREENE, Defendant.**

**Bankruptcy No. 95–1–4891–DK.
Adversary No. 95–1–A454–DK.**

United States Bankruptcy Court,
D. Maryland.

Sept. 13, 1996.

William M. Cusmano, Arlington, VA, for Plaintiff.

Hassan A. El–Amin, Fort Washington, MD, for Defendant.

### MEMORANDUM OPINION

DUNCAN W. KEIR, Bankruptcy Judge.

Consumers United Capital Corporation ("CUCC"), the plaintiff herein, filed a complaint objecting to the discharge of Dana H. Greene ("Debtor"). In the complaint CUCC alleges that Debtor committed numerous acts which constitute violations of 11 U.S.C. § 727(a),[1] including the failure to maintain or

---

**1.** Unless otherwise designated, all references to statutory provisions herein refer to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

destruction of business records, the transfer of assets or failure to satisfactorily explain the loss of assets, and the making of false oaths and accounts. After a one-day trial featuring extensive testimony by the Debtor, the Court took the matter under advisement. Based upon the Debtor's testimony and the documentary evidence admitted at the trial, the Court finds that CUCC has sustained its burden of proving that Debtor has committed various acts which violate § 727, and accordingly Debtor shall be denied a discharge.

## I.

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on August 11, 1995. Beginning in or around 1988, the Debtor operated and was the president of Incontacare, Inc. ("Incontacare"), a company in the business of selling medical supplies to hospitals and nursing homes. Incontacare is also a debtor in a separate bankruptcy case pending in this Court, having filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 2, 1995.[2]

At the trial, Debtor testified that Incontacare experienced financial difficulties beginning sometime in late 1994. Between August and October of 1994, the Debtor undertook efforts to "close down" Incontacare's operations and transfer its sales business to a sole proprietorship, also owned by the Debtor, known as D. Greene & Associates. It was Debtor's testimony that he was attempting to create a single "institutional business," and that during September and October of 1994 he began to combine, on a rather informal basis, the business affairs and accounting records of Incontacare and D. Greene & Associates. It is this blending of the Debtor's two businesses which forms the basis of CUCC's objection to discharge.

## II.

■ CUCC, as plaintiff, bears the burden of demonstrating that Debtor is not entitled to a discharge. Fed.R.Bankr.P. 4005; *see Farouki v. Emirates Bank Int'l, Ltd.,* 14 F.3d 244, 249 (4th Cir.1994) ("Although the burden may shift to the debtor to provide satisfactory, explanatory evidence once the creditor has established a *prima facie* case, the ultimate burden rests with the creditor."). In order to sustain this burden, CUCC must prove by a preponderance of the evidence that Debtor has committed an act (or acts) which warrant the denial of Debtor's discharge. *Farouki,* 14 F.3d at 249.

The Court finds that CUCC has proven, by a preponderance of the evidence, that Debtor (i) failed to preserve financial documents and records of Incontacare without justification in contravention of § 727(a)(3) and (a)(7); (ii) caused Incontacare to transfer, with intent to hinder, delay, or defraud a creditor, property of Incontacare within one year before the date of the filing of Debtor's petition in contravention of § 727(a)(2)(A) and (a)(7); and (iii) knowingly and fraudulently made a false oath or account by failing to identify in his bankruptcy schedules assets in which he held an interest in violation of § 727(a)(4)(A).

### A. Applicability of § 727(a)(7)

■ Section 727(a)(7) creates an exception to discharge in instances where

> the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider....

11 U.S.C. § 727(a)(7). In cases in which the debtor is an individual, an insider includes a "corporation of which the debtor is a director, officer, or person in control." 11 U.S.C. § 101(31)(A)(iv). Debtor testified at trial that he was the president of Incontacare. Debtor further testified that he was a partner at Incontacare with a person named Dr. John Richards, but that pursuant to a corporate resolution Debtor was authorized to operate the business as he saw fit and was not required to consult with Dr. Richards before making business decisions. As Debtor is an individual and both an officer and a "person in control" of Incontacare, it follows that Incontacare was an insider of Debtor for purposes of § 727(a)(7). *See Barclays/American Business Credit, Inc. v. Adams (In re*

---

**2.** *In re Incontacare,* No. 95–1–1208–PM (petition filed Mar. 2, 1995).

*Adams)*, 171 B.R. 298, 302 (W.D.Tenn.1992), *aff'd*, 31 F.3d 389 (6th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995). Accordingly, Debtor's discharge will be denied if he committed any of the acts prohibited by § 727 with respect to either his own case or the Incontacare case. *Ramsay v. Jones (In re Jones)*, 175 B.R. 994, 997 (Bankr.E.D.Ark.1994); *In re Adams*, 171 B.R. at 302; *Haywood Properties, Ltd. v. Jacobe (In re Jacobe)*, 116 B.R. 463, 467 (Bankr.E.D.Va.1990); *see also* 4 Lawrence P. King, *Collier on Bankruptcy*, ¶ 727.10, at 727–85 (15th ed.1996) ("Section 727(a)(7) extends the basis for denial of discharge to the debtor's misconduct in a substantially contemporaneous related case.").

### B. Section 727(a)(3) and (a)(7)

 The Court finds that CUCC has proven, by a preponderance of the evidence, that Debtor, in his capacity as president and a controlling person of Incontacare, failed to preserve business records of Incontacare without reasonable excuse. Section 727(a)(3) bars a debtor's discharge where

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case....

11 U.S.C. § 727(a)(3). The appropriate inquiry is whether the debtor kept records which would allow creditors to ascertain the debtor's present financial condition and business transactions made over a reasonable period of time. *Peoples Bank of Charles Town v. Colburn (In re Colburn)*, 145 B.R. 851, 860 (Bankr.E.D.Va.1992). The Bankruptcy Code does not demand perfection, but it does require debtors to maintain records in a manner that is reasonable under the circumstances of the particular case. *Gullickson v. Brown (In re Brown)*, 194 B.R. 514, 520 (D.Kan.1996); *Anderson v. Wiess (In re Wiess)*, 132 B.R. 588, 592 (Bankr.E.D.Ark. 1991).

Debtor's accountant testified at trial, and the evidence produced at trial showed that Debtor, by himself and through his accountant, did retain many of Incontacare's business records including income statements and general ledgers. The evidence also demonstrated, however, that Debtor failed to preserve material financial data without reasonable justification.

When Incontacare ran into financial difficulties in October of 1994, Debtor began the process of transferring Incontacare's sales business to his sole proprietorship, D. Green & Associates. At some point during this process the business records of Incontacare and D. Greene & Associates became combined. In response to questioning by the Court, Debtor admitted that certain income statements[3] of D. Greene & Associates combined financial information relating to both D. Greene & Associates *and* Incontacare, and that there was no way that Debtor (not to mention a creditor or the Chapter 7 Trustee) could determine which transactions reflected in those income statements were attributable to D. Green & Associates and which were attributable to Incontacare. By failing to keep Incontacare's business records segregated from those of D. Greene & Associates during this "winding up" period, Debtor failed to provide an ascertainable trail of the assets and revenues which passed through Incontacare during the period of time leading up to its bankruptcy. *Siegel v. Weldon (In re Weldon)*, 184 B.R. 710, 714 (Bankr.D.S.C.1995).

Debtor also testified that he stored invoices and other business records of Incontacare in a computer that he personally owned. Debtor eventually sold the computer sometime after Incontacare filed its petition for relief under Chapter 7, but made no effort whatsoever to preserve the information contained in the computer.

 An objective standard should be applied in determining whether a debtor is justified in failing to preserve financial records, and the court must therefore assess Debtor's conduct with respect to how a reasonable person would have acted under simi-

---

3. *See* Plaintiff's Exhibit 7B.

72

lar circumstances. *In re Brown,* 194 B.R. at 520. Debtor was unable to explain, in a satisfactory manner, why he sold the computer without retaining the information in some other form, such as a printed hardcopy or floppy disk.

The evidence strongly suggests, however, that Debtor discarded many of Incontacare's relevant business records in an effort to prevent a sheriff's levy on Incontacare's assets pursuant to a judgment held by a creditor named Cascade HBA, Inc. ("Cascade").[4] Debtor's explanation that he didn't have the storage space required to retain the documents was not credible and contradicted his earlier testimony, provided at a deposition taken on November 9, 1995, that he "had to just get rid of everything that was in Incontacare's name," including invoices, in order to avoid an imminent sheriff's levy resulting from Cascade's judgment. *See* Plaintiff's Exhibit 4 at 94–96. Based on this evidence, the Court concludes that Debtor failed, without justification, to preserve material financial information which would allow creditors to ascertain Incontacare's business transactions with reasonable accuracy, and for this reason Debtor's discharge shall be denied.

### C. § 727(a)(2)(A) and (a)(7)

■ Section 727(a)(2)(A) operates to deny the debtor a discharge in instances where

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be, transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition. . . .

Debtor admitted at trial that in September and October of 1994, he transferred assets of Incontacare to D. Greene & Associates, and that this transfer was at least partially motivated by Debtor's desire to prevent a creditor named Cascade from executing upon those assets pursuant to a judgment obtained against Incontacare. Debtor further testi-

fied that it was his intent to preserve the assets in order to pay other suppliers and creditors of Incontacare.

In a deposition of the Debtor taken on June 15, 1995, Debtor attested as follows:

We had a judgment from Cascade PSH [sic], and there was an attempt to recover the judgment by garnishing our account, and in order to protect the company to shut the company down by the end of the year, I had to put the cash flow into my account in order to preserve the company so I could successfully shut it down without having all the money being taken.

In retrospect I was protecting my supplier, Monumental Paper Company. I did this in an attempt to protect my supplier because I wanted them to get paid, and at that time if Cascade PSH [sic] had come and taken that amount from them, it really wasn't Cascade PSH's [sic] money, it was Monumental Paper's money. I had a commitment to my supplier to try to protect his money.

Plaintiff's Exhibit 1. The Debtor's testimony at trial was consistent with this earlier statement. In order to prevent Cascade from executing on its judgment, Debtor transferred assets, including an estimated $50,000 of Incontacare's receivables, to D. Green & Associates. Debtor's counsel stated in closing argument that Debtor transferred the funds in order to keep them out of the hands of Cascade. In so doing, Debtor hoped to preserve those funds and use them to pay other creditors, including Unisource and Monumental Paper Company, and thereby keep his medical supply business operating.

There is no dispute, then, that Debtor, within one year before the date of the filing of both his own and Incontacare's bankruptcy petition, caused assets of Incontacare to be transferred to D. Green & Associates with the actual intent to hinder Cascade's efforts to collect on a debt. There is no question as to Debtor's intent, as he has admitted that he transferred the assets for the purpose of frustrating Cascade's collection efforts and

4. The evidence adduced at trial further revealed that the very reason Debtor attempted to transfer Incontacare's assets and future sales business to

D. Green & Associates was to prevent Cascade from attaching Incontacare's assets. *See* discussion *infra* section II.C.

improving his ability to pay other creditors. *See First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir.1986); *see also Gullickson v. Brown (In re Brown)*, 194 B.R. 514, 519 (D.Kan.1996) (admission of desire to keep assets away from creditors is strong proof of intent to hinder creditors); *cf. Rosen v. Bezner*, 996 F.2d 1527, 1533 (3d Cir.1993) (noting that requisite intent to hinder creditors might be lacking in situation where debtor conceals property but is unaware that such property might be subject to attachment or seizure by creditors).

The fact that the transfer of $50,000 in accounts receivable to D. Greene & Associates is disclosed in Incontacare's Statement of Financial Affairs does not compel this Court to find otherwise. Section 727(a)(2) bars a discharge if a debtor commits an enumerated act "with intent to hinder, delay, *or* defraud a creditor...." 11 U.S.C. § 727(a)(2) (emphasis supplied). Because this phrase is worded in the disjunctive, it is not necessary to prove fraudulent intent in order to deny a discharge. *NCNB Texas Nat'l Bank v. Bowyer (In re Bowyer)*, 916 F.2d 1056, 1059–60 (5th Cir.1990), *aff'd on reh'g*, 932 F.2d 1100 (5th Cir.1991). This is especially true under the circumstances of this case, where Debtor has freely admitted that the purpose of the transfer was to prevent Cascade from attaching Incontacare's assets.

Moreover, the fact that Debtor's motivation for making the transfer was at least in part to fulfill his obligation to other creditors in order to save his business is not a valid a defense. The case of *In re Adeeb, supra*, is instructive on this point. In that case the debtor was experiencing financial problems in connection with the operation of several gas stations. After a creditor threatened to attach debtor's property, the debtor, upon advice from a non-bankruptcy attorney, transferred the title to parcels of real property to third parties for no consideration, but retained the beneficial interest in those parcels. The debtor subsequently hired a bankruptcy attorney, who advised the debtor to reverse the transactions and disclose them to his creditors. *In re Adeeb*, 787 F.2d at 1341.

On appeal, the debtor argued that he could not have made the transfers with the intent to hinder or delay his creditors because it was his intent "to protect the property from one creditor for the benefit of the other creditors." *Id.* at 1343. The court rejected this argument and stated as follows:

> Adeeb is also mistaken in his assertion that he lacked actual intent because he intended to protect some of his creditors. Our inquiry under section 727(a)(2)(A) is whether Adeeb intended to hinder or delay a creditor. If he did, he had the intent penalized by the statute notwithstanding any other motivation he may have had for the transfer. *Cf. Matter of Trinity Baptist Church*, 25 B.R. 529, 532–33 (Bankr. M.D.Fla.1982) (admirable of debtor to attempt to protect assets from one creditor for benefit of all creditors; nevertheless, the result is hindrance and delay of creditors that makes the transfer voidable). Further, the statute requires only that the debtor make the transfer with intent to hinder, delay, or defraud "a creditor." There is no requirement that the debtor intend to hinder all of his creditors. *See Matter of Goldberg*, 2 B.R. 15, 17 (Bankr. S.D.Fla.1979).

*Id.* Similarly, Debtor's attempt to avoid Cascade's collection efforts, even if made to allow Debtor to pay other creditors, does not change the fact that Debtor transferred Incontacare's assets with the actual intent to hinder Cascade. In the words of Debtor's counsel during closing argument, Debtor was attempting to "rob Peter to pay Paul." Such conduct is prohibited by the Bankruptcy Code, and constitutes grounds for the denial of Debtor's discharge.

### D. § 727(a)(4)(A)

Section 727(a)(4) bars a debtor's discharge where "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account...." CUCC alleges that Debtor failed to make various required disclosures in the schedules and statements of financial affairs he filed in his personal bankruptcy case and in the Incontacare bankruptcy case.

The Court finds that Debtor violated § 727(a)(4) by failing to disclose, in the schedules he filed in his personal bankruptcy case, the existence of three bank accounts in which he held an interest. In his Schedule B, which requires the listing and identification of "all personal property of the debtor of whatever kind," Debtor disclosed a bank account with First National Bank of Maryland, account number 184–8084–0. At trial, however, in response to questions posed by CUCC's counsel, Debtor admitted that at the time he filed his personal bankruptcy petition he was the owner or co-owner of three other bank accounts with NationsBank: (1) an account held in the name of "D Greene & Associates[,] Dana H. Greene Prop", account number 39–3300–0446 (Plaintiff's Exhibit 17); (2) an account in the name of Alma C. Greene and Dana H. Greene, account number 00–9183–9142 (Plaintiff's Exhibit 15); and (3) an account held in the name of Alma C. Greene and Dana H. Greene, account number 00–0705–7245 (Plaintiff's Exhibit 16). Debtor was evasive in his attempts to explain why these accounts were not included in his schedules, and his testimony on this point was simply not credible. As to the accounts he co-owned with Alma Greene, who is Debtor's mother, Debtor testified that his name was merely "on the account" with his mother, that he was nothing more than a "co-signer," and that they were not *his* accounts. But regardless of how Debtor elects to characterize the accounts or which person was the primary user of the account, the fact remains that Debtor was an owner of these accounts and thus the accounts should have been disclosed in Debtor's schedules. As to the remaining account, Debtor testified that its omission from the schedules was an oversight resulting at least in part from his efforts to "combine" the accounts of Incontacare and D. Green & Associates during the latter months of 1994. Debtor's testimony in this regard was simply not believable.

The United States Court of Appeals for the Fourth Circuit has stated that "[i]n order to be denied a discharge [under § 727(a)(4) ], the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with intent to defraud." *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987). The Debtor's failure to disclose the bank accounts is consistent with his other admitted efforts to place assets beyond the reach of a creditor. The Court finds that Debtor's failure to schedule these bank accounts constitutes a willful non-disclosure of material facts in violation of § 727(a)(4)(A). *See id.*

### III.

Although CUCC has raised other grounds for the denial of Debtor's discharge, the Court, having found for the reasons set forth herein that CUCC has proven by a preponderance of the evidence that Debtor is not entitled to a discharge, declines to address them. *See Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 250 (4th Cir.1994) (proof of conduct satisfying any one of the subsections of § 727(a) is sufficient to justify denial of debtor's discharge). The evidence produced at trial reveals that Debtor is an experienced businessman who attempted to combine two business entities under his control in an effort to elude a creditor. In so doing, Debtor committed acts explicitly prohibited by the Bankruptcy Code, and for the foregoing reasons the Court concludes that Debtor is not entitled to a discharge.

An order shall be entered in accordance with the foregoing.