**In re William W. and Cathi L. LAWLER, Debtors.**

**WESTERN WIRE WORKS, INC., Franz Kroell, Donald H. Hartvig, Trustee, Appellants,**

v.

**William W. and Cathi L. LAWLER, Owen Simon and Maureen Mengis, Appellees.**

**BAP Nos. OR–91–1208–VAsO, OR–91–1290–VAsO and OR–91–1411–VAsO.**
**Bankruptcy No. 389–34301–P7.**
**Adv. Nos. 89–3384, 89–3351 and 90–3001.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 21, 1991.

Decided July 8, 1992.[1]

---

1. The Panel filed a Memorandum on April 20, 1992. This Opinion supplants that Memorandum.

Richard D. Senders, Portland, Or., for appellants Western Wire Works & Franz Kroell.

William E. Loose, Portland, Or., for appellees Owen Simon and Maureen Mengis.

Karen L. Keeney, Portland, Or., for appellees William and Cathi Lawler.

Before VOLINN, ASHLAND and OLLASON, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge.

### OVERVIEW

The trustee and two creditors appeal FRCP Rule 41(b) dismissals of their consolidated fraudulent transfer cases. The two creditors also appeal the dismissal of their objections to the discharge of the debtor pursuant to various claims under 11 U.S.C. § 727. The appeal centers on whether the trial court erred by ruling that the plaintiffs had to meet their burden of proving their claims by clear and convincing rather than by a preponderance of the evidence. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

A. Relationships of Parties

Debtors, William and Cathi Lawler, filed bankruptcy under Chapter 7 on September 19, 1989. One year prior thereto they sold certain real estate to Owen Simon, an itinerant auto mechanic who had frequently sought employment with a used car dealer named Delbert Williams, who was Cathi Lawler's uncle. Acting as an agent, Simon purchased the property for one Maureen Mengis for whom he had, on occasion, repaired automobiles. Mengis at times prior to the sale held herself out to be the wife of C. Dennis Williams, the father of Cathi Lawler. C. Dennis was a seller on consignment of used cars from the premises of the aforesaid Delbert, his brother.

B. The Sale and Acquisition of Funds by Lawler

In early 1988, a fire did considerable damage to the Lawler residence. Later that year the couple collected on an insurance claim in connection with the fire. Although the property was listed for sale at $117,000 in the spring of the same year, the Lawlers agreed to sell to Simon at $70,000. By August 1988, the combined insurance proceeds and cash from the sale enabled the Lawlers to accumulate a checking account balance in excess of $120,000. Ap-

proximately one month later, the Lawlers claimed to have less than $100.00.

The parties all agree that Cathi Lawler routinely cashed two checks daily, for either $4300 or $5000, during the early August to mid-September period except for one occasion in early September when she withdrew in excess of $36,000.00. Cathi Lawler testified that she spent the bulk of the money on her children, although she kept no records of her expenditures. In addition she testified that she spent $10,000.00 on a vacation for herself and her husband. She provided no documentation to support the latter assertion. We note, however, that since she and her husband conducted a conveyor services business and she was a licensed realtor, she presumably was aware that documentation and record keeping usually attended receipt and disbursement of funds.

Appellant Western Wire Works filed an action in state court against the debtors in which the court announced its ruling against debtors on September 19, 1988. Thereafter, a judgment of $111,963.40 was entered on October 20, 1988, against William and Cathi Lawler. On November 7, 1988, the same court entered a Judgment and Decree in favor of Western Wire Works and Franz Kroell against William Lawler and Lawler Conveyor Systems for $30,757.40.

Prior to the entry of the judgments, the Lawlers transferred title to their real property to Owen Simon by a Statutory Warranty Deed. Cathi Lawler executed the Deed on September 1, 1988, and William Lawler executed it on the following day. Recording of the transfer from Lawler to Simon occurred on September 20, 1988. Thereafter, Simon's transfer of the deed to Mengis was recorded.

Subsequent to the recording, Western Wire Works and Kroell commenced a state court action to set aside the transfer as fraudulent. Mengis intervened in the state court action and later removed the case to bankruptcy court. At about the same time, the U.S. Trustee, Donald Hartvig, contending that the fraudulent transfer claim belonged to the estate, commenced an adversary proceeding to set aside the transfer as fraudulent. The trustee contended, *inter alia,* that the transfers from Lawler to Simon (and Mengis) were invalid by virtue of 11 U.S.C. § 544(b). The bankruptcy court consolidated the two cases.

In addition, Western Wire Works and Kroell, based on the circumstances surrounding the same transfer of real property, objected to the discharge of their claims against the Lawlers under § 727(a), paraphrased as follows: (2)(A) intent to defraud, transfer of property within one year before the filing of the bankruptcy petition; (3) concealment and failure to keep records; (4)(A) false oath or account; and (5) failure to explain loss of assets. In their complaint in the state court action filed on November 18, 1988, the two plaintiffs indicated that they had garnished Lawlers' bank accounts and payroll checks, but had not received any part of the two judgments.

In the consolidated matter the Lawlers moved for a F.R.C.P. Rule 41(b) involuntary dismissal on the ground that the plaintiffs had shown no right to relief. After hearing testimony on both sides, the Court concluded that the plaintiffs had not shown a fraudulent transfer by clear and convincing evidence:

> "[T]he Court must find that the case as to the fraudulent transfer of the property has not been proven by *clear and convincing evidence."* (Transcript 703) (emphasis added)

He then granted the motion.

Although the trial court had before it evidence on each of the four § 727 allegations, it addressed only in general terms the (a) false oath and (b) failure to explain loss of assets allegations, concluding that Appellants had not met their burden of proof. In discussing the concealment charge the court articulated its application of the clear and convincing standard.

> The Court cannot, in view of the substantial case law, imposing the burden of proof on the Plaintiff in the Section 727 case, and the strong policy of dischargeability for a fresh start in the absence of *clear proof* of *concealment,* deny that

discharge. [emphasis added] (Transcript 915)

Although the court did not so state with specificity, we infer that the same standard appears to have governed the court's ruling on the failure to keep records charge.

Under all the circumstances, the court cannot find that there has been adequate, sufficient proof to establish that the failure to keep books and records, considering the testimony of which indicates reasonable basis that there was an expenditure of money sufficient to overcome any conclusion of intentional withholding, actual concealment of the property, to justify the denial of discharge. (Transcript 916)

After concluding that Western Wire Works and Kroell had not met the burden, the court denied the objection to discharge on the two state court judgments. Western Wire Works, Kroell and the trustee have appealed three rulings: (1) the dismissal of the *two* consolidated fraudulent transfer actions and (2) the dismissal of the objection to discharge.

## ISSUE PRESENTED

The issues before us are (1) whether the trial court erred in requiring that the Appellants prove their cases by clear and convincing evidence and (2) whether Appellees presented a credible or justifiable explanation of the rapid disposition of cash and failure to keep any record of such expenditures.

## STANDARD OF REVIEW

■ Issue (1) involves a conclusion of law relative to burden of proof which is subject to *de novo* review. *In re Marquam Investment Corporation,* 942 F.2d 1462, 1465 (9th Cir.1991). Issue (2), relative to a finding of justification for not keeping records, a factual finding, involves the clearly erroneous standard. Bankruptcy Rule 8013; *In re Cox,* 904 F.2d 1399, 1401 (9th Cir.1990).

## DISCUSSION

■ Appellants' claims in the actions below all rest on allegations that the Lawlers engaged in fraudulent behavior; in summary that the Lawlers acting in concert with relatives and associates, through a series of undocumented cash receipts and transfers fraudulently diverted assets from the reach of creditors. The trial court indicated some question as to the testimony of Cathi Lawler, and therefore a difference in the quantum of proof was most important. In *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991), the Court held that in a § 523 action the plaintiff must prove fraud by a preponderance rather than a clear and convincing standard. At issue in the case was the treatment of a fraud judgment against the debtor. The trial court had applied the preponderance standard, but the appellate court held that the clear and convincing standard applies in § 523 actions. A fair reading of the Supreme Court's opinion leads to the inference that the preponderance standard applies in all bankruptcy proceedings grounded in allegations of fraud. Specifically, the Court noted:

Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants "unless particularly important individual interests or rights are at stake." [citation omitted]

*Grogan,* 111 S.Ct. at 659.

We think it unlikely that Congress, in fashioning the standard of proof that governs the applicability of these [nondischargeability] provisions, would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud.

*Id.* at 659.

There is a question, since this is an action against the debtor's discharge, whether *Grogan* applies in a proceeding under § 727. Here, as in *Grogan,* two sets of interests are at stake: (1) even more strongly, the issue of a fresh start and (2) the need for the legitimate claims of credi-

tors not to be frustrated by fraudulent or fraudulent behavior of the debtors. There may be an additional factor which involves the honesty or overall propriety of the debtors' conduct. In a subsequent circuit level case involving fraud in the context of § 727, the Tenth Circuit reasoned:

> It would be incongruous to apply a "preponderance of the evidence" standard to § 523(a) and a "clear and convincing" standard to § 727(a)(2). Such would be clearly at odds with the rationale in *Grogan.*

*In re Serafini,* 938 F.2d 1156, 1157 (10th Cir.1991). We are likewise of the view that the preponderance standard should apply in both dischargeability cases under § 523 and discharge cases under § 727.

■ Although they had the ultimate burden of persuasion, once Appellants had presented evidence below of concealment, failure to keep records, false oath or account, and failure to explain loss of assets, the burden shifted to Appellees to provide a credible explanation. *In re Martin,* 698 F.2d 883, 887 (7th Cir.1983). Cathi Lawler, on the basis of the record before us, did not furnish such an explanation. She indicated that she was unaware of any need to keep business or personal records. Yet she was personally involved in the operation of a business and was a licensed realtor. We cannot accept the notion that despite her business background, limited though it may have been, she would, in so short a time, profligately dispose of large sums without providing or retaining some scintilla of evidence as to those expenditures. Therefore we cannot accept the court's finding that there was justification or excuse for not keeping records. *See Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) ("a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *(Quoting United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948))).

## CONCLUSION

We conclude that the trial court placed an incorrect and excessive burden of proof on Appellants as to the claim under § 544(b) and as to all the claims under § 727. The burden should have been preponderance rather than clear and convincing evidence. We further conclude that the debtor has not provided a credible explanation or justification for the accelerated disposition of substantial cash sums without any record or documentation thereof. Accordingly, we REVERSE AND REMAND for further proceedings consistent herewith.