In re Maurice Gregory BOURGET, Debtor.

Georges PHILLIPS and Dova Phillips, Plaintiffs,

v.

Maurice Gregory BOURGET, Defendant.

Bankruptcy No. LA 93–54641–LHF.
Adv. No. LA 94–01504–LF.

United States Bankruptcy Court, C.D. California.

Dec. 27, 1994.

Yale M. Harlow, Los Angeles, CA, for plaintiffs.

David S. Hagen, Hagen, Hagen & Hagen, Encino, CA, for debtor/defendant.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Visiting Judge.

This is an action to deny a discharge to Defendant Maurice Gregory Bourget, a Chapter 7 debtor, brought by the Plaintiffs under Section 727(a) of the Bankruptcy Code. Regrettably, because the Court finds after trial of the action that Defendant falsified his business books and records, and made fraudulent transfers of his property within a year prior to filing for bankruptcy relief, his discharge will be denied. This Memorandum is intended as the Court's findings of fact and conclusions of law. F.R.B.P. 7052.

*Background.*

Defendant was a building contractor. In February, 1991, he entered into a contract with the Plaintiffs to remodel their home. The contract was for a fixed price in excess of $100,000. In other words, the parties agreed in advance on the total amount to be paid by Plaintiffs to Defendant for the project. This amount was payable in two man-

ners. First, the contract called for periodic installment payments to Defendant as the project progressed. The agreement also required Plaintiffs to reimburse Defendant for any materials and labor charges he incurred on this job upon his presentation to Plaintiffs of copies of the invoices he received from suppliers or subcontractors.

On December 4, 1991, after completing a significant portion of the project, Defendant quit Plaintiffs' job because a dispute had developed between the parties over whether certain items of work on the job requested by Plaintiffs constituted "extras" under the agreement. Plaintiffs had another party finish the remodel. In March of 1992, Plaintiffs made a claim for damages against Defendant through arbitration proceedings as provided in their contract. Hearings were held in February and March of 1993. On May 11, 1993, the arbitrator entered an award in favor of Plaintiffs and against Defendant for over $54,000 in damages, attorneys fees and costs. A state court judgment confirming the award was entered in August, 1993.

Defendant filed for Chapter 7 bankruptcy relief on January 26, 1994.

*Arguments of the Parties.*

■ Plaintiffs object to Defendant's discharge under Sections 727(a)(2) and 727(a)(3). These statutes provide that a debtor in bankruptcy will not be entitled to a discharge of indebtedness if:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition; [or]

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, includ-

ing books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. . . .

11 U.S.C. § 727(a)(2), (3). Plaintiffs bear the burden of proof of their allegations by a preponderance of the evidence. F.R.B.P. 4005; *In re Lawler,* 141 B.R. 425, 429 (9th Cir. BAP 1992).

Plaintiffs allege, generally, that Defendant kept inadequate and false books and records and that he made a variety of fraudulent transfers of his property shortly before bankruptcy. Defendant disputes Plaintiffs' allegations of wrong doing.

Plaintiffs cite to the Court a number of transactions and instances they contend are examples of fraudulent conveyances of property or inadequate or false record-keeping by Defendant. The Court will not attempt to discuss the specifics of each of Plaintiffs' individual claims. Rather, the Court will focus on only two of Plaintiffs' contentions with which it agrees because they provide sufficient cause under the statutes to deny Defendant a discharge.[1]

*Disposition of the Issues.*

*Falsified Records.*

■ Defendant testified at trial that during the course of Plaintiffs' construction project, he became dissatisfied with Plaintiffs' delay in making the installment payments. While it appears Plaintiffs were not habitually late on these installments, and that in some cases the delay was only a matter of a few days, Defendant concocted a scheme to compensate himself for this inconvenience. He did so by altering the copies of the invoices he presented to Plaintiffs in several instances to show a significantly higher amount than the true charges to him. Defendant frequently, but not exclusively, accomplished his mischief by placing additional digits on the amounts of the invoices, and then photocopying the altered original for submission to Plaintiffs. For example, De-

---

1. The Court makes no findings or conclusions concerning the remainder of Plaintiffs' allega-
tions.

fendant changed an invoice for $588.50 to read $1588.50 on the copy and he changed an invoice for $790 to read $1790.

In this fashion, Defendant concedes he received several thousand dollars more than he was entitled from the Plaintiffs for reimbursement of these charges. Defendant asserts, however, that since the total contract amount was a fixed amount, Plaintiffs would in the final analysis pay no more than the contract required.[2] While not receiving more overall for the project, Defendant admits that by his methods he accelerated the timing of payments to him by Plaintiffs.

Defendant's ruse only became apparent during the arbitration proceedings when Plaintiffs either came across the actual invoices or cancelled checks to suppliers in Defendant's records, or sought out other copies of invoices directly from the suppliers. While Defendant claims his conduct was an innocent attempt to deal with Plaintiffs' tardy payments on other parts of the contract, the Court finds that Defendant knowingly and intentionally set out to dupe Plaintiffs into making early payment in violation of the terms of the parties' contract.

Should Defendant's artifice cost him his right to a discharge in bankruptcy in this case? It appears Congress and the courts would agree that Defendant's strategy should be condemned.

■ Recall, a discharge must be denied to one who "falsifie[s] . . . books, documents, records, and papers from which the debtor's . . . business transactions might be ascertained, unless such act . . . was justified under all the circumstances of the case. . . ." 11 U.S.C. § 727(a)(3). "The purpose of this statute is 'to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs.'" *In re Cox*, 904 F.2d 1399, 1401 (9th Cir.1990) *quoting In re Underhill*, 82 F.2d 258, 260 (2nd Cir.1936). Defendant, as a bankruptcy debtor, must "'present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reason-

able period in the past.'" *Id. quoting Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir. 1971). Although present here, intent to defraud is not an element of this objection to discharge. *In re Bailey*, 145 B.R. 919, 924 (Bankr.N.D.Ill.1992); *In re Kinney*, 33 B.R. 594, 596 (Bankr.N.D.Ohio 1983).

Defendant concedes he falsified his business records as to his dealings with Plaintiffs. Plaintiffs, who were directly involved in a business transaction with Defendant, received the altered documents from him for the purpose of soliciting their payments. The integrity of Defendant's documents was crucial to Plaintiffs' ability to receive the benefit of their contract with Defendant. Because Plaintiffs were required by their agreement to rely upon Defendant's trustworthiness in this regard, Plaintiffs were subject to precisely the kind of abuse that Section 727(a)(3) is designed to deter.

■ Once Plaintiffs established a prima facie showing that Defendant violated Section 727(a)(3), Defendant bears the burden of demonstrating that his conduct was justified under the circumstances. *In re Lawler*, 141 B.R. at 429, *citing In re Martin*, 698 F.2d 883, 887 (7th Cir.1983). He has failed to do so here.

That Defendant's deceit involved merely accelerating Plaintiffs' payments rather than increasing the total to be paid does not render Defendant's conduct any more tolerable. Defendant's motive for his activities is unconvincing. If Plaintiffs were truly delinquent in their progress payments, Defendant's rights and remedies were provided by his contract with them. He could have demanded timely payments under threat of declaring a breach of the agreement and termination of his services. His "end-run" designed to trick Plaintiffs into what he felt was compliance with the contract was not justified under these facts.

The Bankruptcy Code requires debtors to keep books and records which will fairly and accurately reflect important financial transactions. It should not be interpreted to require creditors, such as the Plaintiffs here, to

---

**2.** As an aside, it also now appears that Plaintiffs made one more installment on the progress pay-

ments than necessary, a matter of which Defendant also contends he was unaware.

review Defendant's books with the tenacity of a professional auditor to separate truth from fiction. In summary, Plaintiffs have adequately proven a case for denial of discharge under Section 727(a)(3).

*Transfer of the Porsche.*

■ To support their claims that Defendant should be denied a discharge under Section 727(a)(2), Plaintiffs had the Court examine a number of transfers of property by Defendant prior to bankruptcy claiming each was fraudulent. Most of these transfers were unremarkable. To a different degree, these transactions deserved scrutiny,[3] but in review many seemed to be supported by good consideration and motivated by business judgment. One transfer, however, appears to be transparently fraudulent.

Recall, it was in May of 1993 that Plaintiffs received the arbitration award against Defendant. At that time Defendant must have been aware that Plaintiffs would shortly acquire an enforceable judgment against him for their damages. Defendant's schedules reflect that he also had significant additional debt. Why, then, in this context would Defendant, in effect, give his girlfriend a $10,-000 Porsche in June, 1993, a mere six months before he filed for bankruptcy? This is exactly what Defendant did when he traded in his Porsche sports car as part of the purchase of a new utility vehicle which was then titled in the name of Defendant's female companion.

■ In order to prove a claim under Section 727(a)(2), Plaintiffs must show that Defendant, in making the transfer, harbored an actual intent to hinder, delay, or defraud a creditor or officer of the estate. *In re Woodfield*, 978 F.2d 516, 518 (9th Cir.1992). This intent may be inferred, however, from the circumstances surrounding the transaction. *Id.* Several factors should be examined, not all of which need be present, including:

"1) a close relationship between the transferor and the transferee;

2) that the transfer was in anticipation of a pending suit;

3) that the transferor Debtor was insolvent or in poor financial condition at the time;

4) that all or substantially all of the Debtor's property was transferred;

5) that the transfer so completely depleted the Debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and

6) that the Debtor received inadequate consideration for the transfer."

*Id.*

Here, several of these factors are conspicuous. Defendant was nearing financial *extremis* at the time he disposed of the car, and his creditors, including Plaintiffs, were threatening. The Porsche appeared to be one of Defendant's few unencumbered assets. Defendant would understandably prefer that his girlfriend[4] have the benefit of his equity in the car than to see it lost to his creditors.

Under these circumstances, the Court finds Defendant culpable. Knowing the extent of his debt, and knowing that Plaintiffs would soon be in a position to seize his assets, the Court finds that the only reasonable explanation for the transfer of the Porsche by Defendant was to place its value beyond the reach of his creditors. Defendant protests, but his explanations are implausible.

*Conclusion.*

■ Through the bankruptcy discharge, Congress intended the honest but unfortunate debtor to obtain a fresh start. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). Lamentably, Defendant is not such a debtor.

---

3. For example, in June, 1992, Defendant sold a vehicle for $11,000 cash. He could not tell the Court to whom he sold the vehicle; he could produce no documents generated in the sale; he could show little concerning disposition of the proceeds. Because this transfer takes place more than a year before bankruptcy, it is not a potential basis for denial of discharge under Section 727(a)(2)(A). However, Defendant's account of this transaction did little to enhance his credibility with the Court concerning the transaction discussed below which does support a denial of discharge.

4. While not formally wed, the Court understands the woman is the mother of Defendant's small child.

Plaintiffs' objection to Defendant's right to a discharge in bankruptcy will be sustained and his discharge shall be denied under Sections 727(a)(2) and (a)(3) of the Bankruptcy Code. Counsel for Plaintiffs may submit an appropriate form of judgment to the Court for entry, which form has been approved by counsel for Defendant.