**In re Charles K. GOLDSCHEIN,
Debtor.**

**Steven H. Greenfeld, Trustee, Plaintiff,**

**v.**

**Charles Goldschein and Kristina Goldschein, Trustees of National Medical Service, Inc. Defined Benefit Plan,**

**and**

**Charles Goldschein and Kristina Goldschein, Trustees of National Medical Service, Inc. Defined Benefit Trust**

**and**

**Kristina Goldschein, Defendants.**

**Bankruptcy No. 98–1–2118–DK.
Adversary No. 98–1–491–DK.**

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

Nov. 10, 1999.

---

Steven H. Greenfeld, for Chapter 7 Trustee.

Richard M. Weintraub, for National Medical Services Inc. Defined Pension Benefit Plan and Trust.

## MEMORANDUM OPINION

DUNCAN W. KEIR, Bankruptcy Judge.

### I.

This Adversary Proceeding was commenced by the Trustee in this Chapter 7 case, seeking to set aside three conveyances of interests in property by the Debtor. The matter was tried before the court on May 10, 1999, and at the conclusion of the evidence, each side was granted the opportunity to submit Post–Trial Memorandum of Law. The Trustee (Plaintiff) and Defendants, Charles Goldschein and Kristina Goldschein, Trustees of National Medical Service, Inc. Defined Pension Benefit Plan and Trust (hereinafter "Benefit Plan") submitted post-trial memorandum.

In the amended complaint, the Trustee avers that the Debtor, Charles K. Goldschein, transferred interests in property located in Monroe County, Pennsylvania; Arlington, Virginia; and shares of capital stock of a cooperative unit in New York City by the creation of perfected liens upon such property interests in favor of Defendants, Benefit Plan. Trustee further avers that those transfers are avoidable either as preferences, or as fraudulent conveyances. In Count V of the amended complaint, the Trustee asserts the right to sell the recovered property interests free and clear of the interest of co-tenant and co-defendant, Kristina Goldschein pursuant to 11 U.S.C. § 363(h and j)[1]. Kristina Goldschein does not oppose the complaint and has consented to the sale free and clear of co-tenant's interests and a final order as to Count V was entered on December 28, 1998. There remains for decision, the issues of the avoidance of the lien interests granted to Defendant, Benefit Plan.

At the beginning of trial, the Trustee and Benefit Plan filed a written stipulation of fact, which is part of the record of this Adversary Proceeding. As stipulated therein, the Debtor is a trustee of Benefit Plan. The Debtor filed a voluntary petition commencing the Chapter 7 case on

1. Trustee's complaint refers to sub-parts (i) and (j) of section 363 but requests relief governed by sub-part (h).

February 18, 1998. On the petition date, the Debtor and Kristina Goldschein as tenants by the entireties were the owners of two (2) lots described in part as Lot 6197, Section N and Lot 904, Section A, both shown on "Plotting of Pocono Farms, Inc.", Coolbaugh Township, Monroe County, Pennsylvania (collectively, hereinafter the "Pennsylvania Properties"). The Debtor and Kristina Goldschein as tenants by the entirety also owned a parcel or lot described as Lot Number 3, West Wind Subdivision, located in Arlington County, Virginia and known as 1065 North George Mason Drive (the "Virginia Property"). The Debtor and Kristina Goldschein as tenants by the entirety also owned Three Hundred and Forty–Six (346) shares of capital stock of 405/63 Owners Corporation, representing ownership of a cooperative unit commonly known as Apartment 1D, 40 East 63rd Street, New York, New York (the "New York Property").

It was further stipulated that loans were made by the Benefit Plan to the Debtor and Kristina Goldschein on June 11, 1996 and July 11 1996, evidenced by two (2) promissory notes in the amounts of One Hundred and Forty Thousand Dollars ($140,000) and One Hundred and Twenty–Five Thousand Dollars ($125,000), both dated July 15, 1996. Further loans were made by the Benefit Plan to the Debtor and Kristina Goldschein on December 13, 1996 and December 24, 1996, which are evidenced by a single promissory note in the aggregate sum of One Hundred and Forty–Four Thousand Dollars ($144,000), which note is dated December 1, 1996.

It is stipulated that on December 1, 1996, Debtor and Kristina Goldschein granted to Benefit Plan the mortgage on the Pennsylvania Properties to secure the above described Notes ("Notes") in the aggregate sum of Four Hundred and Nine Thousand Dollars ($409,000). The mortgage on the Pennsylvania Properties was not recorded until February 24, 1997. Also on December 1, 1996, the parties stipulate that Debtor and Kristina Gold-

schein granted to Brian West, as Trustee for the Benefit Plan, as security for the Notes, a Deed of Trust upon the Virginia Property. The Virginia Property's Deed of Trust was recorded on February 21, 1997.

In addition, on December 1, 1996, Debtor and Kristina Goldschein executed a Form UCC–1 granting a security interest to the Benefit Plan in the New York Property, to secure the Notes. The financing statement, UCC–1 was not recorded in New York until May 12, 1997. Finally, it is stipulated that the recordation of the afore described mortgage, Deed of Trust and UCC–1 perfected the respective liens against the respective collateral properties.

The Trustee and Benefit Plan also stipulate that the Debtor is a participant, beneficiary and trustee of Benefit Plan, and that Benefit Plan is the initial transferee of the transfers evidenced by the afore described mortgage, Deed of Trust and UCC–1.

Prior to the trial of this Adversary Proceeding, the court previously completed trial of a separate Adversary Proceeding, Adversary Proceeding No. 98–1–318–DK, filed in the bankruptcy case of Charles K. Goldschein, which had been brought by creditor, Nationsbank, NA (hereinafter the "Discharge Adversary"). On May 6, 1999, for the reasons set forth on the record at the conclusion of that trial, the court granted Nationsbank's prayer that the Debtor be denied a discharge in this Chapter 7 case. An order denying discharge was entered May 10, 1999, which order is a final order from which no appeal was brought.

In his Post–Trial Memorandum in this Adversary Proceeding, the Trustee argues that Trustee is entitled to judgement avoiding the transfers at issue herein as fraudulent conveyances pursuant to 11 U.S.C. § 548(a)(1)(A) by a finding that the transfers were made with intent to hinder or delay creditors within one (1) year prior to the petition date instituting the bank-

ruptcy.[2] Trustee argues that Defendant Benefit Plan is collaterally estopped from refuting such a finding and the Trustee is entitled as a matter of law to the avoidance of the transfers upon this basis. Benefit Plan does not address the issue of collateral estoppel in its Post–Trial Memorandum. Benefit Plan argues its view of the facts and law on the avoidance issues without regard to collateral estoppel. The court will first address the estoppel argument.

## II.

Examination of the record of the Discharge Adversary reveals that the Plaintiff therein asserted that the transfers of the Virginia Property and the Pennsylvania Properties were done with intent to hinder and delay creditors and were effectuated within one (1) year of the filing of the bankruptcy case. However, no averment, nor proof was offered as to the transfer of the New York Property. Upon the evidence in the Discharge Adversary, the court found that the transfers of the Virginia Property and Pennsylvania Properties occurred within one (1) year of the date of the petition in bankruptcy and were transfers by the Debtor for the purposes of hindering and delaying creditors by clogging the equity in those properties. The court's findings included the conclusion of the court that the transfers of the Pennsylvania Properties and Virginia Property were done with actual intent to hinder and delay creditors. The final order entered in the Discharge Adversary denied the entry of a discharge to the Debtor in Debtor's bankruptcy case pursuant to 11 U.S.C. § 727(a)(2), which provides in part that a discharge shall not be granted when a debtor transfers property within one (1) year before the date of the filing of a

petition "with intent to hinder or delay . . . a creditor . . .".

Addressing then the Trustee's argument that collateral estoppel requires this court to find that the transfers of the Pennsylvania and Virginia Properties are avoidable under 11 U.S.C. § 548, it is well established that four requirements must be satisfied in order for the doctrine of collateral estoppel to apply. The issue in the subsequent proceeding which is sought to be determined by collateral estoppel must be identical to the issue that was involved in the prior proceeding. Secondly, that issue must have been actually litigated in the prior proceeding and thirdly, must have been determined by a valid and final judgement. The fourth requirement is that such determination must have been essential or necessary to the entry of the final judgement in the prior proceeding. *Kelly v. Armstrong,* 141 F.3d 799, 801 (8th Cir.1998) (citing *Farmland Indus., Inc. v. Morrison–Quirk Grain Corp.,* 987 F.2d 1335, 1339 (8th Cir.1993)). If all four requirements are satisfied, the doctrine of collateral estoppel will preclude re-litigation of the factual finding by a party who had a full and fair opportunity to litigate the issue in the prior proceeding. *Sedlack v. Braswell Services Group, Inc.,* 134 F.3d 219, 224 (4th Cir.1998).

The persons bound by the prior factual finding include the actual parties to the prior proceeding. Courts have extended the preclusion to non-parties where there is such a degree of affinity of interests of the person who was not a formal party to the prior proceeding, as to render the doctrine of collateral estoppel applicable. *Virginia Hospital Assoc. v. Baliles,* 830 F.2d 1308, 1312 (4th Cir.1987). Participation and control of the prior litigation

---

**2.** Section 548 provides in pertinent part:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor has or became, on or after the date that such transfer was made or such obligation was incurred, indebted; . . . .

by the party to be bound is necessary to the application of collateral estoppel to a non-formal party. *Id.; See also, Charles A. Wright, et al., Federal Practice and Procedure,* § 4451 (1981):

> The question is essentially a matter of fact, to be determined by looking for that measure of "practical control" that makes it fair to impose preclusion. Preclusion is fair so long as the relationship between the non-party and the party was such that the non-party had the same practical opportunity to control the course of the proceedings that would be available to a party.

*Wright,* § 4451 at 429–30 (internal footnotes omitted).

 In this Adversary Proceeding, the Trustee seeks preclusion against Benefit Plan. In the prior proceeding (Discharge Adversary), the defendant was Charles Goldschein, individually.[3] Thus legally, the party defendants in these two actions are not the same.

However, Richard M. Weintraub, Esquire, represented Defendant, Charles Goldschein in the Discharge Adversary, as well as filing pleadings therein as "Attorney for National Medical Services, Inc. Defined Benefit Pension Plan and Trust". *See* Information Pursuant to Rule 26(f), pleading 15–1, filed in Adversary Number 98–1–318–DK. Further, Mr. Weintraub entered his appearance at the outset of the trial in the Discharge Adversary as counsel for the Benefit Plan and participated in the trial.

The interests of the Debtor and of Benefit Plan are identical in opposition to an attempt by the respective Plaintiffs in these proceedings to obtain a determination that the transfers were done willfully with intent to hinder and delay creditors. The degree of control and the amount of participation by the Defendant, Benefit Plan in the prior proceeding is more than sufficient to place the Benefit Plan in a position where it should be bound by the determination made in the prior proceeding. It actively participated by its counsel Mr. Weintraub in the prior proceeding wherein Mr. Weintraub in effect "wore two hats" as co-counsel for the Debtor and as counsel for the Benefit Plan. In effect, this court finds that the Benefit Plan participated so extensively in the Discharge Adversary that in effect it assumed a de-facto role as a party. As such, it must be bound by the final judgement in the prior proceeding. *Wright, supra* § 4448 at 409. In addition, this court finds that the interests of the Benefit Plan were adequately represented in the Discharge Adversary.[4]

 Turning then to whether issue preclusion applies to this proceeding, the court examines the language of Sections 548(a)(1) and 727(a)(2) of the Bankruptcy Code. The former section provides that the Trustee may avoid a transfer of an interest in property by the Debtor in property that was made within one (1) year of the date of the filing of the petition in bankruptcy with actual intent to hinder or delay or defraud any entity to which the Debtor was indebted. Section 727(a)(2) requires the court to deny a discharge to a debtor who, with intent to hinder, delay or defraud a creditor has transferred proper-

---

3. Charles Goldschein is also the debtor and Charles and Kristina Goldschein are the transferors of the property interests in question. Charles Goldschein is also the largest beneficiary of the Benefit Plan and Kristina Goldschein is also a beneficiary, although she has testified that she has never been employed by the company.

4. Courts have sometimes used the term "privity" in the context of res judicata or issue preclusion to describe a person whose interest were adequately represented in the prior litigation. *Wright, supra* § 4448. *See also, Latham v. Wells Fargo, N.A.,* 896 F.2d 979, 983 (5th Cir.1990) ("A non-party is in privity with a party for res judicata purposes in three instances. First, if he has succeeded to the party's interest in property, he is bound by prior judgments against the party. Second, if he controlled the prior litigation, he is bound by its result. Third, he is bound if the party adequately represented his interests in the prior proceeding.").

ty of the debtor within one (1) year before the date of the filing of the petition. The legal issue of whether the debtor has transferred his interest in property within one (1) year prior to the filing of the petition in bankruptcy with intent to hinder or delay a creditor (person to whom the debtor is indebted), is identical in these two sections of the Bankruptcy Code. Thus the issue raised in the instant Adversary Proceeding seeking avoidance of transfers under Section 548(a)(1) is identical to that determined by the court in the Discharge Adversary. There is no question that as to the Pennsylvania and Virginia properties the issue has been actually litigated, as there was a trial conducted by this court on that issue. Further, the record is clear that the issue was determined in the prior proceeding by a valid and final judgement and that the determination was essential to that judgement. In fact, the finding of a transfer with actual intent to hinder and delay a creditor was the basis for the denial of discharge. Consequently, collateral estoppel is applicable in this adversary and requires the finding that the debtor transferred lien interests in the Pennsylvania and Virginia Properties to Benefit Plan within one (1) year of the petition date, with actual intent to hinder or delay creditors.

As to the transfer of the interests in the New York Property, no determination was made by the court in the Discharge Adversary and hence no preclusive doctrine applies to the issue before the court in the instant adversary. The stipulated facts in evidence in this adversary, include that the Debtor and Kristina Goldschein executed a security agreement (UCC–1) granting to the Benefit Plan a security interest in the New York Property on December 1, 1996, the same date as shown on the Deed of Trust and mortgage documents, which were the subject of the prior litigation discussed above. Further, it has been stipulated that the financing statement was not recorded in New York (thereby perfecting the security interest), until May 12, 1997.

In the Discharge Adversary, this court held that the date of recordation or perfection is the date of transfer for purposes of measuring the one (1) year under 11 U.S.C. § 727(a)(2)(A). *See also, Dean Witter Reynolds, Inc. v. MacQuown (In Re MacQuown)*, 717 F.2d 859 (3rd Cir. 1983) (holding that the date of transfer should be measured by the date that the transfer was good as against a subsequent bona fide purchaser or judgement holder, which, in accordance with applicable state law, was the date of recordation as opposed to the date the deed was signed).[5] In this Adversary Proceeding, the date of transfer for purposes of determining the one (1) year period is statutorily defined to be the date of perfection.[6]

 Until perfection, Section 9–301 of the Uniform Commercial Code provides that the unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before perfection.[7] Therefore the court holds in the instant Adversary Proceeding the date of transfer is the date of perfection for purposes of application of the one (1) year reach back set forth in 11 U.S.C. § 548(a). The transfer of the security interest in the New York Property having been perfected in

---

**5.** The MacQuown case was decided under Section 14(c)(4) of the Bankruptcy Act of 1898. That provision is virtually identical to 11 U.S.C. § 727(a)(2)(A).

**6.** Under 11 U.S.C. § 548,
a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.
11 U.S.C. § 548(d)(1).

**7.** N.Y. Uniform Commercial Code § 9–301 (McKinney, 1999).

May of 1997, such transfer occurred within one (1) year of the petition in bankruptcy.

■ Further, as the court did in the Discharge Adversary, the court finds that the evidence supports by a preponderance standard that the debtor transferred the interest in the New York Property with actual intent to hinder and delay creditor, Nationsbank, NA. At the trial in the instant Adversary Proceeding, the Trustee called Charles Goldschein, debtor and transferor, as the Trustee's first witness. Upon examination, Mr. Goldschein acknowledged that Nationsbank was the holder of four (4) Notes, which were in default in late 1996. He further testified that Nationsbank commenced collection action possibly earlier than the real estate liens were recorded in February 1997. There was uncontradicted evidence that the revenues of the corporate makers of the Notes, which had been guaranteed by Charles Goldschein, were insufficient to pay the outstanding debt to the bank. Charles Goldschein had borrowed moneys from the Benefit Plan without granting security for such borrowings at the time that the borrowings were made.

In the face of the demand by the bank and institution of collection actions, Charles Goldschein transferred the security interest in the New York Property to the Benefit Plan of which he was the largest potential beneficiary. Having viewed the credibility of the witness, and in light of all the evidence, this court concludes that the transfer was made with actual intent to hinder and delay the collection action by Nationsbank. By encumbering the New York Property with a security interest in favor of the Benefit Plan, the debtor effectively transferred the realizable value of the New York Property to the Benefit Plan and out of reach of the creditor.

### III.

■ The Benefit Plan next argues that the appropriate standard of proof for a finding of fraud is "clear and convincing evidence," not the preponderance level of proof applied by the court in the Discharge Adversary. In support of its argument, the Benefit Plan cites *United States v. Gleneagles Inv. Co.*, 565 F.Supp. 556, 580 (M.D.Pa.1983), *aff'd sub nom., United States v. Tabor Court Realty Corp.*, 803 F.2d 1288 (3rd Cir.1986).

*Gleneagles* is inapposite. In that case, the court was concerned with the appropriate standard of proof under Pennsylvania's Fraudulent Conveyances act, applicable in bankruptcy through Section 544 of the Bankruptcy Code. In contrast to *Gleneagles*, all three transfers at issue in this case were made within one (1) year of the petition date and the Trustee seeks avoidance under 11 U.S.C. § 548 without reference to state law. The court therefore examines the transfers and the level of proof required under Section 548(a)(1) of the Bankruptcy Code, not under state law.

Although the case supplied by the Benefit Plan was inapplicable, the court is nevertheless aware that there is a split of authority on what standard of proof the trustee must meet in order to demonstrate actual fraud under Section 548(a)(1). The Bankruptcy Code itself is silent on the issue. Some courts have applied the "clear and convincing" standard, *e.g., Ossen v. Bernatovich (In re National Safe Northeast, Inc.)*, 76 B.R. 896, 901 (Bankr. D.Conn.1987), and others have applied a preponderance standard, *e.g., Thompson v. Jonovich (In re Food & Fibre Protection, Ltd.)*, 168 B.R. 408, 418 (Bankr.D.Ariz. 1994); *Western Wire Works, Inc. v. Lawler (In re Lawler)*, 141 B.R. 425, 428 (9th Cir. BAP 1992). For the most part, those courts applying the preponderance standard do so as an extension of the United State Supreme Court reasoning in *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). *See, e.g., Lawler, supra* at 428 ("A fair reading of the [*Grogan*] opinion leads to the inference that the preponderance standard applies in all bankruptcy proceedings grounded in allegations of fraud.").

This court agrees with the latter line of cases. In *Grogan*, the Supreme Court concluded that a preponderance-of-the-evidence standard was the appropriate level of proof in nondischargeability actions based on fraud under Section 523(a)(2) of the Bankruptcy Code. In so doing, the Court noted that unlike many states, when Congress has created substantive causes of action for fraud, it has chosen the preponderance standard. *Grogan*, 498 U.S. at 288–89, 111 S.Ct. 654 (citing, *inter alia*, 31 U.S.C. § 3731(c) (False Claims Act) and 42 CFR § 1003.114(a) (Medicare and Medicaid fraud under 42 U.S.C. § 1320a–7a)). The Supreme Court found especially persuasive that Congress chose a preponderance standard to govern a debtor's right to a discharge altogether under Section 727(a)(4) of the Bankruptcy Code, which denies discharge based upon a finding that the debtor committed a fraud upon the bankruptcy court. *Grogan* at 289, 111 S.Ct. 654 (citing H.R.Rep. No. 95–595, p. 384 (1977) ("The fourth ground for denial of discharge is the commission of a bankruptcy crime, though the standard of proof is preponderance of he evidence"); S.Rep. No. 95–989, p. 98 (1978) (same)).

The reasoning applied in *Grogan* as to Section 523 dischargeability actions is equally applicable in Section 548 fraudulent transfer actions. Consequently, this court concludes that a preponderance-of-the-evidence standard governs in Section 548 fraudulent transfer actions.

### IV.

In its Post–Trial Memorandum, the Benefit Plan appears to argue that non-bankruptcy law precludes the avoidance by the trustee of the transfers under the inalienability provisions of other federal statutes. Further, the Benefit Plan argues that it is a successor transferee under 11 U.S.C. § 550 and should be protected. The Benefit Plan is incorrect in these assertions.

### IV. (A)

The Benefit Plan's inalienability argument is grounded in a faulty premise:

that the Chapter 7 trustee's attempt to avoid the transfers of interests in properties in question is equivalent to an attempt to garnish or otherwise alienate assets of the Benefit Plan. In effect, the Benefit Plan argues that by virtue of a "Favorable Determination Letter" issued by the Internal Review Service in December 1993, that it is a "qualified retirement plan" and that such a determination is prima facie evidence that Plan assets may not be alienated either voluntarily or involuntarily, inside or outside of bankruptcy. *See, Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992)(finding that an ERISA qualified plan satisfies the anti-alienation provision of Section 541(c)(2)). The Benefit Plan then appears to argue that it would be an error for this court to second guess and effectively undo the IRS Determination Letter by finding the transfers at issue to be avoidable. In support, the Benefit cites to the Fifth Circuit Court of Appeals:

> We are persuaded that the legislature intended for its own state courts (or bankruptcy courts applying Texas law) to defer to the IRS in determining whether a retirement plan is "qualified" under the Internal Revenue Code. We see no reason that the legislature would want its courts, which are inexperienced in federal tax matters, to second-guess the IRS in such a complex, specialized area. We find it much more reasonable to assume that the legislature contemplated creating an exemption from seizure for a debtor's retirement funds that could be simply and readily determined by referring to the federal tax treatment of those funds. Moreover, we do not believe that the legislature wanted to adopt a scheme that invites frequent, unseemly, conflicting decisions between the state court or bankruptcy court, and the IRS, such as occurred in this case.

*In re Youngblood*, 29 F.3d 225, 228 (5th Cir.1994).

The Benefit Plan's reliance on *Youngblood* is misplaced. The anti-alienation provisions protect a beneficiary's interest in legitimate Plan assets from collection actions by creditors. The anti-alienation provision of ERISA[8] and the Internal Revenue Code[9] do not preclude the avoidance of fraudulent transfers.

Creditors concerned that a non-alienation provision is ineffective because of a debtor's control over a pension plan, either before or after bankruptcy, are not without other means of protection. Under 11 U.S.C. § 548, a bankruptcy estate trustee can void a debtor's transfer of property that was made in the prior twelve months and was made with the intent to hinder, delay, or defraud creditors. In this way, creditors can block a debtor in Shumate's position from actually taking advantage of his control position and depleting the estate.

*Shumate v. Patterson,* 943 F.2d 362, 365 n. 4 (4th Cir.1991), *aff'd,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).

### IV. (B)

The Benefit Plan's final argument is an assertion that it should receive protection under Section 550[10] as a good faith transferee that took the property interests in question for value and without knowledge that the transaction was voidable as a fraudulent transfer under Section 548. While the court questions whether it was possible for Charles Goldstein in his individual capacity to fraudulently convey property to Charles Goldstein in his Plan trustee capacity "without knowledge of the voidability" of the transaction, the protection of 11 U.S.C. § 550(b)(1) is simply not applicable. The protection that the Bankruptcy Code affords in Section 550 is available only to successor transferees of the initial transferee. Here, the Benefit Plan stipulated that "the Plan and Trust are the initial transferees of the transfers evidenced by the recordation of the Mortgage, Deed of Trust and UCC–1."[11] Consequently, the Benefit Plan's reliance on Section 550 is misplaced.

### Conclusion

For the reasons set forth above this court holds that debtor's transfers of liens upon the described property in Pennsylvania, Virginia and New York to Benefit Plan are avoided pursuant to Section 548(a)(1) of the Bankruptcy Code.

An Order in conformance with this memorandum of opinion shall be issued separately.

---

**8.** 29 U.S.C. § 1056(d).

**9.** 26 U.S.C. § 401(a)(13).

**10.** Section 550 provides in relevant part:
(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transferee.
(b) The trustee may not recover under subsection (a)(2) of this section from—
(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt in good faith, and without knowledge of the voidability of the transfer avoided; or
(2) any immediate or mediate good faith transferee of such transferee.

**11.** Paragraph 18, Stipulation of Facts, pleading no. 13.